## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-21917-CIV-ROSENBAUM/SNOW

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

GEORGE G. LEVIN and FRANK J. PREVE,

      Defendants.

_____/

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on Defendant Frank Preve's Amended Motion to Dismiss [D.E. 13] and Motion of Defendant George G. Levin to Dismiss the Complaint [D.E. 74]. The Court has reviewed the Complaint, both motions, and the supporting and opposing filings, and is otherwise fully advised in the premises. For the reasons set forth below, the Court grants in part and denies in part both motions.

### I. BACKGROUND

On January 27, 2010, former attorney Scott W. Rothstein pled guilty to various charges stemming from his direction of a $1.2 billion Ponzi scheme[1] from his position as a shareholder, chairman, and the chief executive officer of the law firm of Rothstein, Rosenfeldt and Adler, P.A. Among other aspects of this scheme, Rothstein solicited victim investors to purchase discounted

_____

[1] A Ponzi scheme, generally, "is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *United States v. Ward*, 486 F.3d 1212, 1214 n.1 (11th Cir. 2007) (citation and internal quotation marks omitted). It is named after Charles Ponzi, an infamous Boston swindler. *Id.*

purported confidential settlement agreements. Rothstein represented these settlement agreements to have been entered into between plaintiffs and defendants in settlement of legal claims and falsely advised victim investors that their monies would be used to pay the plaintiff a discounted percentage of the settlement award immediately in exchange for the victim investors' rights to receive the entirety of the supposed settlement award over time. The Securities and Exchange Commission ("SEC")'s enforcement action against Defendants Preve and Levin in this case arises out of Defendants' alleged involvement in selling securities tied to the fictional legal settlements at the heart of Rothstein's Ponzi scheme.

## A. Banyon 1030-32.

According to the SEC,[2] Levin began personally investing in the purported Rothstein settlements in 2007. D.E. 1, ¶ 19. As his investments grew, Levin began using Banyon 1030-32 ("Banyon"), a Nevada limited liability company with its principal place of business in Florida, wholly owned by Levin and his wife, to purchase settlements from Rothstein. *Id.* ¶¶ 11, 19.

For each settlement that Banyon bought, the SEC avers that Preve and Rothstein created a "document package" that included a redacted copy of the (fictitious) settlement agreement, a document indicating that the supposed settlement-defendant had fully transferred the settlement funds to Rothstein's firm's trust account, and a document assigning the ostensible settlement-plaintiff's rights to Banyon. *Id.* ¶ 20.

Beginning in December 2007, Levin—through Banyon—began offering investors promissory notes, drafted by Preve and executed by Levin on behalf of Banyon, with the stated purpose of

---

[2] The information contained in this section comes from the SEC's Complaint in this action. On a motion to dismiss, the Court accepts the non-conclusory allegations as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

purchasing discounted settlements from Rothstein. *Id.* ¶¶ 22-23.  According to the SEC, these promissory notes were not registered with the SEC, and no registration exemption applied because they were purchased by "unsophisticated and unaccredited" investors. *Id.* ¶ 31.

The notes were marketed to friends and acquaintances of Levin and Preve as well as to other investors. *Id.* ¶ 24.  As part of this marketing effort, Levin and Preve "generally showed" a Powerpoint presentation to investors that contained the following pertinent statements:

> 100% of the settlement funds cover [sic] by the Settlement Agreement are wired to and received by the [RRA trust account] before any disbursements are made by [Banyon 1030-32 to purchase the settlements];

and

> [Banyon 1030-32] will have all executed documents necessary to access [the settlement funds] BEFORE any disbursements are made.

*Id.* ¶ 26 (additions in Complaint) (internal quotation marks omitted).  The SEC alleges that as "the managing member" of Banyon, Levin had "ultimate authority over the content" of the presentation. *Id.* ¶ 25.  The Complaint does not specify precisely when, between December 2007 and October 2009, the Powerpoint was created or presented, nor does it identify with more precision than "investors" to whom it was shown. *Id.* ¶¶ 26, 30.

Despite the representations made in the Powerpoint presentation, the SEC claims that from "at least July 2008," Preve would actually purchase settlements from Rothstein before receiving any confirmation that funds were wired to the trust account and without receiving any executed documents from Rothstein. *Id.* ¶ 27.  Further, the SEC alleges that Levin knew, or was reckless in not knowing, that Preve had not received confirmation of funds or executed documents, contrary to what had been represented to investors. *Id.* ¶ 29.  In all, Banyon raised $57 million from ninety investors who purchased the promissory notes. *Id.* ¶ 30.

3

**B. Banyon Income Fund**

In addition to the Banyon activities, the SEC alleges that Levin and Preve raised additional funding to purchase Rothstein settlements through the Banyon Income Fund ("BIF").  The events that culminated in the creation of BIF are as follows:  Between April and November 2008, Levin—through separately created entities—entered into agreements with New York-based hedge funds to obtain lines of credit to purchase settlements.  *Id.* ¶ 33.  In December 2008, the hedge funds began restricting the lines of credit, leading to Levin's and Preve's purchase of fewer settlements and causing Rothstein to miss payments.  Rothstein complained to Levin and Preve about the lack of funds and told them that he would suspend payments from the trust account unless Levin and Preve provided Rothstein with $100 million for the purposes of covering immediate payments to Rothstein's plaintiffs.  *Id.* ¶¶ 34-36.

In early 2009, therefore, Levin and Preve, together with a Philadelphia investment adviser, established BIF as an investment fund to raise money to invest in the settlements.  *Id.* ¶ 39.  BIF was created as a limited partnership with Banyon as its general partner.  *Id.* ¶ 40.  Levin, the SEC alleges, thus had "ultimate authority over the operations and statements" of BIF because he was the managing member of Banyon.  *Id.*

The private placement memorandum ("PPM") for BIF related that BIF "would receive an assignment of the settlement and related revenue stream prior to [BIF] issuing a check to purchase a settlement."  *Id.* ¶ 42.  Additionally, the PPM described a "verification process" that would be conducted by an "independent third-party verifier" to assure the settlement was valid and the funds had been deposited in the trust account.  *Id.* ¶ 43.  Further, the PPM contained the following statement:

> Prior to purchase by [Banyon Income Fund], the full settlement
> amount to be paid on each Purchased Settlement will have been

4

> deposited in a trust account . . . and the right to receive distributions
> out of the trust account will be assigned to [Banyon Income Fund].

*Id.* (alterations in Complaint) (internal quotation marks omitted).  The SEC asserts that neither Levin nor Preve informed BIF investors that Rothstein had already ceased making payments on the previously purchased settlements, nor did they disclose Rothstein's requirement that Levin and Preve raise $100 million in order to resume payments on the previously purchased settlements.  *Id.* ¶¶ 46-47.

Despite the PPM's representations, the SEC continues, BIF purchased settlements without obtaining documentation, and by the end of the third quarter of 2009, BIF lacked documentation for approximately $40 million of $140 million in settlement purchases.  *Id.* ¶ 44.  According to the SEC, Levin and Preve also knew that the third-party verifier could not verify settlements missing documentation, and that by at least late September 2009, the verifier had not verified settlements purchased by BIF since July 2009.  *Id.* ¶ 45.

Between May and October 2009, BIF raised $100 million from approximately eighty-three investors.  *Id.* ¶ 39.  But, after the collapse of Rothstein's scheme in October 2009, BIF was unable make payments to its investors and ceased operations.  *Id.* ¶ 49.

## C. The Complaint

Based on these allegations, on May 22, 2012, the SEC filed the pending enforcement action against Levin and Preve.  *Id.*  The six-count Complaint alleges that both Levin and Preve violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c), by selling unregistered securities (Count I); committed fraud in violation of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)-(3) (Counts II and III); and aided and abetted violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), by Banyon 1030-32 and the Banyon Income Fund (Count VI).  The SEC also asserts that Levin

committed fraud in violation of Section 10(b) and Rule 10b-5 (Count IV) and that Preve aided and abetted Levin's Section 10(b) and Rule 10b-5 alleged violations (Count V). *Id.* ¶¶ 50-70. As remedies, the SEC seeks declaratory and injunctive relief, disgorgement, and civil penalties against both Defendants. *Id.* at 17-18.

As for the structure of the Complaint, the factual background related in this section of this Order appears in a forty-nine-paragraph introductory and background section at the beginning of the SEC's Complaint. Following this background, the SEC then sets forth the six counts against Levin and Preve, incorporating the background into each count. *See id.* ¶¶ 50, 54, 57, 60, 63, 67.

## II. LEGAL STANDARDS

### A. General Pleading Requirements of Rule 8, Fed. R. Civ. P.

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the

plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).  Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## B. Heightened Pleading Requirements of Rule 9(b), Fed. R. Civ. P.

Additionally, Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard for causes of action asserting fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purpose of this particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  Rule 9's heightened pleading standard also applies to securities-related fraud cases brought by the SEC.  *SEC v. Solow*, No. 06-81041, 2007 WL 917269, at *2 (S.D. Fla. Mar. 23, 2007).

Rule 9(b) may be satisfied if a plaintiff sets forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) [them], and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  These

factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements

through alternative means.  *Id.* (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th

Cir. 1988).

It is true that Rule 9's particularity requirements must be read in conjunction with Rule 8 "so

as not to abrogate the concept of the notice pleading."  *Degirmenci v. Sapphire-Fort Lauderdale,*

*LLLP*, 693 F. Supp. 2d 1325, 1344 (S.D. Fla. 2010) (quoting *Durham*, 847 F.2d at 1511).

Nevertheless, because fair notice is the most basic consideration underlying Rule 9(b), a complaint

must reasonably notify the defendants of their purported role in the scheme and, in cases involving

multiple defendants, the complaint must inform each defendant of his or her alleged role in the fraud.

*Brooks*, 116 F.3d at 1381 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78

(7th Cir. 1994)).

### III. DEFENDANTS' MOTIONS TO DISMISS

Defendants argue that the Complaint must be dismissed for a variety of reasons, including

failure to satisfy Rule 9(b)'s heightened pleading standard, failure to set forth sufficient factual

allegations in the Complaint to render each claim plausible under *Twombly* and *Iqbal*, untimely filing

under the Dodd-Frank Act, and, with respect to Levin, insufficient service of process.  The Court

considers each contention, as appropriate, in turn.

### A. Rule 9(b) Pleading Requirements

Defendants Preve and Levin[3] challenge the SEC's fraud-related counts as not having been

pled with the particularity required by Rule 9(b).  Specifically, Preve and Levin argue that the

---

[3] Levin's Motion to Dismiss incorporates by reference all arguments made by Preve's Motion
to Dismiss, and the SEC has adopted by reference its response to Preve as its response to Levin on
these arguments.  D.E. 74 at 15; D.E. 79 at 19.

incorporation by reference of a large factual section and the bald recital of the cause of action in each count are inadequate to meet the pleading requirement.  D.E. 13 at 12-13; D.E. 74 at 16-18.  The SEC counters that the factual allegations contained at the beginning of the Complaint satisfy Rule 9(b)'s standard.  For the reasons set forth below, the Court agrees that the fraud-related counts of the SEC's Complaint, as pled, do not meet the particularity demanded by Rule 9.

**1. Which Counts Are Covered by Rule 9(b)?**

Defendants argue that all six counts in the Complaint are subject to Rule 9(b)'s heightened-pleading standard.  D.E. 13 at 2.  For its part, the SEC appears to concede that all but Count I, which claims that Levin and Preve sold unregistered securities in violation of Section 5 of the Securities Act, must comply with Rule 9(b)'s requirements.  D.E. 23 at 26-27.  The Court concludes that Rule 9(b) governs Counts II through VI but does not apply to Count I.

First, Counts II, III, and IV allege fraud on their faces.  Thus, no question exists that they must satisfy Rule 9(b)'s pleading standard.

Counts V and VI assert that Defendants aided and abetted fraud.  They, too, are covered by Rule 9(b).  To explain why, the Court considers *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273 (11th Cir. 2006).

*Wagner* established the standard for determining the applicability of Rule 9(b) to so-called nonfraud claims.  In *Wagner*, the Eleventh Circuit held that Rule 9(b) applies to nonfraud claims when the misrepresentation justifying relief on such claims under the Securities Act is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)-5.  *Id.* at 1277.  The *Wagner* Court was addressing claims under Sections 11 and 12(a)(2) of the Securities Act, which create causes of action for material misstatements or omissions contained in registration statements or prospectuses and oral communications.  *Id.* (citing 15 U.S.C. §§ 77k(a), 77*l*(a)(2)).  Section 11 does

not require a showing of scienter to establish a violation.  Rather, it contains no state-of-mind element, and liability is "virtually absolute, even for innocent misstatements."  *Id.* (citation and internal quotation marks omitted).  Section 12(a)(2) includes a similarly low threshold for demonstrating liability.  Because these statutes impose nearly strict liability for covered misrepresentations or omissions, the *Wagner* Court referred to the counts alleging violations of them as "nonfraud" claims.  The Court then explained that a nonfraud claim "must be pled with particularity when the facts underlying the misrepresentation at stake in the [nonfraud] claim are said to be part of a fraud claim, as alleged elsewhere in the complaint."  *Id.* at 1278.

Although not specifically addressed, *Wagner*'s rationale suggests that aiding and abetting a securities-fraud violation, which involves alleging a primary actor's fraud and defendant's knowing and substantial assistance to that actor's fraudulent conduct, *see SEC v. K.W. Brown & Co.*, 555 F. Supp. 2d 1275, 1306-07 (S.D. Fla. 2007), should also be pled with particularity under Rule 9(b).  Thus, Courts in this district have held that Rule 9(b) applies to allegations of aiding and abetting securities violations, when the same fraud-related factual allegations underlying the aiding-and-abetting claim also underlie the fraud claim.  *Solow*, 2007 WL 917269 at *3-*4.  Accordingly, Plaintiff's aiding-and-abetting counts, V and VI, must be pled with particularity under Rule 9(b).

Defendants attempt to stretch the holdings of *Wagner* and *Solow* to cover Count I of Plaintiff's Complaint concerning the sale of unregistered securities.  In particular, Defendants point to the language in *Wagner* stating that "nonfraud" claims that are "part of a defendant's fraudulent conduct" require heightened pleading and argue that it supports the conclusion that a Section 5 violation must also be subject to heightened pleading.  D.E. 29 at 5 (citing *Wagner*, 464 F.3d at 1280).  Defendants claim that because the alleged sale of unregistered securities took place "at the exact same time" as the alleged fraud, Rule 9(b) applies.  *Id.*

10

But the Eleventh Circuit's use in *Wagner* of the "nonfraud" label applied only to Section 11 and 12(a)(2) claims that still involved a *misrepresentation* that was "the beginning of—or otherwise part of—the predicate fraud for the Rule 10(b)(5) securities fraud claim." *Wagner*, 464 F.3d at 1277-78. As the Eleventh Circuit explained its reasoning, the Court emphasized the reputation-protecting purpose of Rule 9(b) and reasoned that, in line with that purpose, if a misrepresentation is alleged to have been fraudulent, any claims based on the same *misrepresentation*—even if those claims do not require fraudulent scienter—must be pled with particularity to protect a defendant's reputation interests. *Id.* at 1278 ("The purpose of the rule is to protect a defendant's good will and reputation when that defendant's conduct is alleged to have been fraudulent."). Significantly, though, the court noted that if a misrepresentation is not fraudulent in character, a Section 11 or 12(a)(2) claim is not subject to Rule 9(b)'s pleading requirements. *Id.* Only when the claimed misrepresentation "is part and parcel of a larger fraud [does] the rule's protective purpose attach[]." *Id.*

The elements of a Section 5 violation such as asserted in Count I require the SEC to allege that "(1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." *SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004) (citations omitted). A Section 5 violation does not require any allegation of misrepresentation or omission that would raise the same sort of reputation concerns when pled in conjunction with a fraud claim. Accordingly, Rule 9(b) does not apply to Count I of the SEC's Complaint.

**2. Does Plaintiff's Complaint Satisfy Rule 9(b)?**

In *Wagner*, the Eleventh Circuit also held that a plaintiff fails to satisfy Rule 9(b) when the specific counts of a plaintiff's complaint are insufficiently detailed on their own and are insufficiently linked to detailed facts set forth elsewhere in the complaint. *Id.* at 1278-79. While

*Wagner* dealt with a "shotgun pleading," which "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense," the rationale from *Wagner* has been applied in cases where only the fact section is reincorporated with each count. *See Solow*, 2007 WL 917269 at *3. Indeed, Wagner itself requires such an application. As the Eleventh Circuit explained,

> [W]e do not pass on whether there are sufficient factual predicates in the large fact section prior to the substantive counts that would state a claim with the required particularity. We simply are noting that there are not enough facts in the substantive counts, disregarding the incorporation clauses. . . . We agree with the district court that the plaintiffs are required to explain better what facts support their claims for relief.

*Wagner*, 465 F.3d at 1278-79 & nn. 3-4; *see also Solow*, 2007 WL 917269 at *4.

The SEC asserts that its fact section sufficiently pleads the misrepresentations or omissions made by Levin and Preve, the timing and contents of such statements, and Defendants' gains from their fraud. D.E. 23 at 19-21. Further, the SEC correctly points out that it is not required to plead detailed evidence concerning each and every fraudulent act alleged. *Id.* at 21 (citing *SEC v. Levin*, 232 F.R.D. 619, 624 (C.D. Cal. 2005)). Nor is the SEC incorrect in stating that Rule 9(b) may be satisfied by "alternative means," *id.* at 19 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511-12 (11th Cir. 1988)), although those alternative means must still alert Defendants to the precise misconduct for which they are liable, *Durham*, 847 F.2d at 1511. But the SEC does not attempt to distinguish the point made in *Wagner* and *Solow* that the factual allegations must be appropriately linked to the causes of action alleged in the Complaint to give Defendants proper notice of the claims against them.

For example, the SEC's Complaint does not specify whether the Banyon or BIF misstatements and omissions, or both, are the basis for the fraud allegations in Counts II and III

against both Levin and Preve.  Similarly, Count IV alleges fraud against just Levin under the Exchange Act, and Count V alleges Preve aided and abetted that fraud.  But it is not clear whether the same misstatements and omissions underlying Counts II and III also support Counts IV and V, and, if they do, why those same facts provide a basis for fraud liability against Levin but for only aiding-and-abetting liability against Preve when they are intended to support fraud liability against both Defendants in Counts II and III.

Further, the Complaint alleges that both Levin and Preve prepared and presented the Banyon Powerpoint but then states that Levin "had ultimate authority over the content" of that presentation. Thus, it is unclear whether the SEC predicates Levin's liability on the preparation of the Powerpoint or on his "ultimate authority," or on both.

Similarly, the Complaint suggests that the Powerpoint presentations, and their offending statements, were created and shown beginning in December 2007.  D.E. 1, ¶¶ 22, 25-26.  Yet the Complaint asserts that Preve did not have the confirmations and documents claimed in the Powerpoint presentations only beginning in "at least" July 2008.  *Id.* ¶ 27.  On the face of the Complaint, therefore, it is not clear that the statements were actually misrepresentations between December 2007 and July 2008, and, without more specific allegations of when the Powerpoints were presented, the Complaint does not necessarily allege that any misrepresentations were made to investors.

In each of these examples, the SEC's Complaint fails to give adequate notice to each Defendant of the respective bases underlying each of the SEC's claims against them.  Accordingly, Counts II through VI of the SEC's Complaint do not meet Rule 9(b)'s particularity standard. However, as the court held in *Wagner*, dismissal of the Complaint would be inappropriate.  464 F.3d at 1280.  Instead, the SEC will be permitted fourteen days to replead its Complaint.

13

Just as in *Wagner* and *Solow*, the Court does not render any judgment on the sufficiency of the factual allegations to support a claim if they are properly pled.  For this reason, and because, as previously explained, it is not clear to the Court for which statements and omissions for each count the Court should consider the sufficiency of Defendants' scienter, materiality, and interstate commerce arguments, the Court cannot adequately—and therefore does not—address them now as applied to Counts II through VI.

**B. Defendants' Motion to Dismiss Count I for Failure to State a Claim**

Defendants urge that even if Count I is not subject to Rule 9(b)'s heightened pleading requirement, Count I should still be dismissed for failure to state a claim under standard pleading requirements.  D.E. 13 at 14.  As stated above, the elements of a Section 5 violation are "(1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." *Calvo*, 378 F.3d at 1214.  According to Defendants, Count I must be dismissed because of the SEC's failure to (1) link specific facts to the elements of Count I; (2) allege which securities were unregistered; (3) aver that Defendants sold or offered to sell securities; (4) identify which securities were not exempt from registration; and (5) articulate how interstate transportation, communication, or the mails were used to sell or offer for sale the unregistered securities.  D.E. 13 at 14.

**1. Sufficiency of Pleading Under Rule 8**

Concerning Defendants' first argument, the SEC's incorporation by reference of the forty-nine-paragraph background section is not fatal under Rule 8.  While shotgun pleadings that incorporate all allegations of each count into every successive count are impermissible, pleadings such as this one that merely incorporate the same set of factual circumstances discretely into each count are sufficient to state a claim. *See Oginsky v. Paragon Props. of Costa Rica, LLC*, 784 F.

Supp. 2d 1353, 1361 (S.D. Fla. 2011).  Thus, while it may not be ideal for Plaintiff to incorporate

by reference forty-nine paragraphs, Count I is not rendered invalid by Plaintiff's having done so.

That said, Plaintiff's incorporation by reference of every factual paragraph, some of which

have little or no factual relevance to the Section 5 violation, is nonetheless problematic in this case

because it superfluously links the allegations of fraudulent conduct with the allegations of selling

unregistered securities.  While  a Section 5 violation need not be pled with Rule 9(b) particularity,

by including allegations of fraudulent conduct in Count I, Plaintiff implicates the reputational

concerns articulated in *Wagner*.  Rule 12(f), Fed. R. Civ. P., permits a Court to strike "impertinent"

allegations from a pleading.  Because the SEC must already replead Counts II through VI, the Court

directs the SEC to strike impertinent, fraud-related factual allegations from Count I in its amended

complaint.

**2. Alleging Which Securities Are Unregistered**

Addressing Defendants' second argument, the Complaint adequately identifies the Banyon

promissory notes as the unregistered securities at the heart of Count I.  The factual section of the

Complaint notes that "[n]o registration statement covering the promissory notes was filed or in

effect" from December 2007 to October 2009.  D.E. 1, ¶ 31.  And Count I specifically alleges that

"[n]o registration statement was filed or in effect with the Commission pursuant to the Securities Act

with respect to the *securities and transactions issued by Banyon 1030-32 described in this*

*Complaint* and no exemption from registration existed with respect to these securities and

transactions."  D.E. 1, ¶ 51 (emphasis added).  Thus, the only securities issued by Banyon that are

described in the Complaint are the promissory notes.

Nor, as Defendants complain, is Count I ambiguous about to which unregistered securities

it refers.  Many of the possible alternatives suggested by Defendants are not described in the

Complaint at all but rather are found only in Defendants' own exhibits.  Thus, Count I plainly does not encompass those proposed alternatives.  Further, the "assignments of settlement proceeds" referenced by Defendants, D.E. 13 at 14, are not securities issued by Banyon but, rather, constitute documentation that Banyon allegedly received from Rothstein.  *See* D.E. 1, ¶ 20.  Finally, while the Complaint does describe Levin as the guarantor of the promissory notes, *id.* ¶ 29, the Complaint does not describe any separately issued "guarantees/security agreements on each of the notes," as suggested by Defendants.  Accordingly, the SEC's Complaint sufficiently identifies the Banyon promissory notes as the unregistered securities.

**3. Alleging Sale or Offer for Sale**

Defendants also attack Count I as failing to establish that Defendants directly or indirectly sold or offered to sell securities.  To satisfy this element, a defendant need only be a "necessary participant" or "substantial factor" in the illicit sale.  *Calvo*, 378 F.3d at 1215.  Thus, Defendants assert that the SEC has failed to allege that Levin or Preve was a "necessary participant" or "substantial factor" in the sale of unregistered securities.  D.E. 13 at 14.  Plaintiff's Complaint, however, sets forth more than sufficient basis, when taking all facts as true, to find that both Levin and Preve were necessary participants or substantial factors in the sale of the Banyon promissory notes.  For example, the Complaint alleges that Levin is an owner of and the sole managing member of Banyon,  D.E. 1, ¶ 11; that Preve managed the day-to-day operations of Levin's investments, *id.* ¶ 8; that Preve drafted and Levin executed the promissory notes, *id.* ¶ 23; that both Levin and Preve marketed the promissory notes to investors, *id.* ¶¶ 24-26; and, that Levin personally guaranteed the promissory notes, *id.* ¶ 29.  All of these factual allegations, taken as true, more than adequately state a plausible claim that Levin and Preve were necessary participants or substantial factors in the sale of the Banyon promissory notes.

### 4. Identifying Nonexemption of Securities

Defendants further cite the SEC's failure to allege that the promissory notes did not meet the requirements for an exemption from registration as a grounds for dismissing Count I. D.E. 13 at 14. They then invite the Court to examine exhibits provided with Preve's Motion to Dismiss and to draw certain inferences from the Complaint itself to conclude that the promissory notes are exempt from registration. *Id.*; D.E. 29 at 4. Defendants' arguments fail for a number of reasons.

First, Plaintiff need only allege that no registration statement was in effect, and the SEC has done so here. The existence of a registration exemption is an affirmative defense that must be pled by Defendants, not negated by Plaintiff. *See SEC v. ConnectAJet.com, Inc.*, No. 3:09-CV-1742-B, 2010 WL 2484280, at *3-*5 (N.D. Tex. June 17, 2010). While, generally, the existence of an affirmative defense will not support a motion to dismiss under Rule 12(b)(6), a complaint may be dismissed when the affirmative defense clearly appears on the face of the complaint and its allegations. *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).

That is not the case here, despite Defendants' suggestions to the contrary. *See* D.E. 29 at 4. Defendants point to the SEC's allegation that the term of the notes was generally 180 days to support a conclusion that all notes were exempt. *Id.* Further, Defendants assert that, since Levin's and Preve's friends and acquaintances purchased many of the notes and the notes were personally guaranteed by Levin, most, if not all, of the investors were accredited, thus qualifying the notes for exemption. *Id.* But Defendants' arguments require the Court to draw inferences from the Complaint in favor of Defendants rather than Plaintiff. On a motion to dismiss, however, the court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro*, 693 F.3d at 1337; *Miccosukee Tribe*, 304 F.3d at 1084. The Court cannot infer an exemption affirmative defense from the allegations in the Complaint to which

Defendants' point, especially in light of the SEC's averment that no registration existed and that unsophisticated and unaccredited investors purchased the notes.  D.E. 1, ¶ 31.

Nor, as Defendants urge, do the sample Powerpoint presentations and promissory notes that Defendants attach to their response demonstrate that all promissory notes were exempt from registration.  D.E. 13 at 14-15; D.E. 29 at 4.  Defendants themselves admit that the content of these documents changed over time.  Accordingly, even assuming that these documents are properly considered as part of Plaintiff's Complaint—a questionable proposition[4]—they do not by themselves show that all Banyon promissory notes were exempt from registration.

**5. Articulating the Link to Interstate Commerce**

Finally, Defendants contend that the SEC's Complaint should be dismissed because it offers only "vague and conclusory boilerplate recitations" of how Levin and Preve used interstate transportation, communication, or the mails to sell or offer for sale the unregistered securities.  D.E. 13 at 14.  Plaintiff points to several examples that illustrate the use of instrumentalities of interstate commerce in the sale of the promissory notes.  For example, the SEC notes Preve's use of email to communicate with Rothstein regarding the purchase of settlements for sale to investors, D.E. 1, ¶ 28.  In addition, Plaintiff alleges that Levin and Preve established lines of credit with New York-based hedge funds to provide financing to purchase settlements while Banyon continued to issue

---

[4] Generally, on a motion to dismiss under Rule 12(b)(6), the court is limited to the complaint and exhibits attached to it.  *Brooks*, 116 F.3d at 1368-69.  However, when a plaintiff refers to certain documents in its complaint, and those documents are central to the plaintiff's claim, a defendant may attach them to its dismissal motion, and the court may consider the documents as part of the pleadings.  *Id.*  Thus, Defendants suggest that their attached Powerpoints and promissory notes should be considered part of Plaintiff's pleading and because, according to Defendants, they facially demonstrate an affirmative defense, Plaintiff's Complaint should be dismissed.  The Court does not decide whether Defendants' procedural construction is valid.  Instead, the Court assumes for the sake of argument that Defendants are correct about the role of these documents in order to demonstrate that they would not support dismissal, in any event.

promissory notes based on those settlements. *Id.* ¶ 33.

Defendants object to Plaintiff's reliance on Preve's emails because the Complaint alleges only that Preve emailed Rothstein, that both parties were located in Florida, and that Banyon's purchase of settlements from Rothstein is entirely separate from Banyon's offer of promissory notes based on those settlements. D.E. 29 at 2. However, the Internet, which necessarily includes email, is an "instrumentality of interstate commerce." *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004). Because the interstate communications prong of Section 5 is broadly construed, *see SEC v. Boock*, No. 09-Civ-8261(DLC), 2011 WL 3792819, at *17 & n.20 (S.D.N.Y. Aug. 25, 2011), allegations of Preve's email use are sufficient to withstand a motion to dismiss.

Further, interstate transportation or communication need only be used in connection with the sale or offering for sale of unregistered securities. *See SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972); *SEC v. Rosen*, No. 01-0369-CIV, 2002 WL 34421019, at *3 (S.D. Fla. Feb. 22, 2002). Nothing in Section 5 requires that communication be directly with the purchasers. Accordingly, Preve's communications with Rothstein attempting to obtain documentation for the settlements being sold to Banyon investors sufficiently asserts a connection between interstate communication and the sale of the promissory notes. *See* D.E. 1, ¶¶ 27-28.

Similarly, the credit facilities provided by the New York hedge funds are adequately connected to the sale of Banyon promissory notes. The Complaint alleges that while Banyon continued to issue promissory notes, Levin and Preve opened the lines of credit to allow them to keep purchasing settlements, and the settlements form the basis for the promissory notes. *See id.* ¶ 33. Although Defendants contest that these credit facilities were used to purchase settlements actually linked to Banyon promissory notes, for the purposes of a motion to dismiss—where inferences are drawn in favor of Plaintiff—the lines of credit sufficiently allege a connection to

19

interstate commerce.

## C. Timeliness of the Complaint Under the Dodd-Frank Act

Defendants also seek to dismiss Counts II through VI of the Complaint on the basis that the SEC's enforcement action is untimely under the Dodd-Frank Act.  Specifically, Defendants point to Section 929(U) of the Act,[5] which directs SEC staff to file an enforcement action within 180 days of the first Wells notice[6] unless the period is appropriately extended by the SEC's Director of the Division of Enforcement or the Director's designee.  D.E. 13 at 11 (citing 15 U.S.C. § 78d-5).  Defendants assert that they received their first Wells notice regarding violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act on June 6, 2011, *id.*, and reason that if the 180-day period were not appropriately extended, the claims related to Section 17(a) and Section 10(b) are untimely because they were filed more than 180 days after June 6, 2011.[7] *Id.* at 11-12.  The SEC counters that Section 4E sets forth an internal deadline for the SEC that cannot serve as a basis for dismissing an enforcement action and, in any event, the SEC received an appropriate extension.  D.E. 23 at 30-32.

This Court agrees that Section 4E imposes only an internal deadline on the SEC, not a private right to be free from agency action occurring beyond the internal deadline.  The Supreme Court has held on several occasions that an internal agency deadline of the type found in Section 4E does not create a statute of limitations.  *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 157-59 (2003)

---

[5] Section 929(U) of the Dodd-Frank Act was incorporated into the Securities Exchange Act of 1934 as Section 4E.

[6] A Wells notice is a letter notifying the recipient that the SEC is close to bringing an enforcement action against the recipient. *See Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 453 F. App'x 871, 874 n.4 (11th Cir. 2011) (citations omitted).  It provides the recipient with an opportunity to set forth his or her version of the law or facts. *Id.*

[7] The SEC's Complaint was filed May 22, 2012.

(expressing "reluctance to conclude that every failure of an agency to to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake" (internal quotations omitted)).  A statutory provision stating that the Government shall act within a specified time, without more, does not create a jurisdictional limit precluding action.  *Id.* at 158.  Nor will federal courts generally impose a "coercive sanction" when a statute "does not specify a consequence for noncompliance with statutory timing provisions."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63-64 (1993).

Here, Defendants point to no other provision of law that suggests that noncompliance with the deadline set forth in Section 4E requires an enforcement action to be dismissed.  Nor is the Court aware of any.  For this reason, the 180-day period specified in Section 4E cannot alone serve as a basis for dismissing the SEC's claims.

**D. Levin's Motion to Dismiss Under Rule 12(b)(5)**

Defendant Levin also seeks to dismiss the SEC's Complaint under Rule 12(b)(5) for insufficient service of process.  The SEC filed its Complaint on May 22, 2012, meaning that the 120-day service period prescribed by Rule 4(m), Fed. R. Civ. P., expired on September 19, 2012.  D.E. 1.  On June 26, 2012, the Court entered an order shortening to August 10, 2012, the period to serve Levin or demonstrate good cause for the failure to effect service.  D.E. 7.  The SEC then sought and was granted on August 10, 2012, an extension until September 24, 2012, of the period to serve Levin.  D.E. 18; D.E. 21.  On September 25, 2012, the Court found good cause—based on efforts detailed by the SEC [D.E. 30]—to extend the service period once again, this time until November 26, 2012.  D.E. 32.

On October 3, 2012, counsel for Levin entered a "limited appearance" for the purposes of challenging service of process.  D.E. 34.  Two days later, Levin's counsel executed on Levin's behalf

a waiver of service, although Levin's counsel reserved his right to challenge, among other things, service of process.  D.E. 36.

## 1. Waiver of Service

Before addressing the parties' arguments, it is first necessary to clarify the effect of the waiver of service.  Levin concedes that by executing the waiver, Levin was served with the Complaint on October 5, 2012.  *See* D.E. 42 at 3 ("Levin, however, is not attempting to quash the service he accepted on October 5, 2012.  Rather, Levin agrees that service occurred through his acceptance; he just does not agree that such acceptance waived his right to contest the timeliness of that service.").  As noted above, the Court had extended the period of service until November 26, 2012.  Accordingly, Levin was served within an open period for service.  His attacks on service, therefore, must be construed as attacks on the Court's orders extending the service period.

## 2. Standard of Review

The parties dispute which standard should be applied to the Court's review of its previous extension orders.  Plaintiff contends that Levin's attack on service is tantamount to a motion for reconsideration of those prior extensions and, consequently, requires that the relatively stringent reconsideration standard be applied.  D.E. 79 at 9.  Levin, on the other hand, suggests that the Court should not apply such a rigorous standard but does not explicitly set out what standard the Court should employ.  Levin cites several appellate opinions that have affirmed district courts' vacating of previously granted extensions, but none specifically addresses the standard applied.  However, each appellate decision makes clear that the district court vacated its prior decision after "reconsidering" it.  *See McCrae v. KLLM, Inc.*, 89 F. App'x 361, 363 (3d Cir. 2004) ("The district court's action in this case constituted a reconsideration and correction of its prior erroneous decision . . . ."); *Tso v. Delaney*, 969 F.2d 373,  375 & n.3 (7th Cir. 1992) ("The district judge reconsidered

his earlier decision . . . ."); *Putnam v. Morris*, 833 F.2d 903, 904 (10th Cir. 1987) (vacating prior extension "upon reconsideration and an evidentiary hearing"). The Court, therefore, concludes that the reconsideration standard provides the appropriate framework for reevaluating the Court's prior extension orders.

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough County*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)). The party moving for reconsideration "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.*

Rule 4(m), Fed. R. Civ. P., requires a party to serve a complaint and summons within 120 days of the complaint's being filed. If a plaintiff shows good cause for failing to serve the complaint, a court must extend the time for service. *Id.* On the other hand, if a plaintiff fails to timely serve the complaint, a court must either dismiss the case without prejudice or extend the time for service. *Id.* To demonstrate good cause for an extension, a plaintiff must show that it has proceeded in good faith, that it has a reasonable basis for noncompliance, and that the reason for the delay is due to more than simple inadvertence or mistake. *Durgin v. Mon*, 659 F. Supp. 2d 1240, 1258 (S.D. Fla.

2009).

Courts also enjoy discretion to extend the service period even in the absence of good cause. *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005). Where good cause has not been demonstrated, courts must consider case-specific factors that may warrant a permissive extension of time. *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). Such factors include the applicable statute of limitations, a defendant's attempt to conceal a defect in service, or a defendant's efforts to evade service, but these factors are not exclusive.

### 3. Analysis of Levin's Motion

Levin supports his motion seeking reconsideration of the Court's extension orders by providing an affidavit from Levin generally detailing his whereabouts from May 22, 2012, to October 5, 2012, D.E. 74-1, and by arguing that this Court erred in finding the SEC had shown good cause justifying an extension, D.E. 74 at 11. According to Levin, the SEC attempted to serve Levin at his residence[8] too few times and at times when Levin was not likely to be home.[9] D.E. 74 at 11. Further, Levin complains that the SEC's process servers did not "stake out" Levin's residence for any extended period of time, nor did they leave messages or attempt to locate Levin by phone. *Id.* at 11-12. Nor, according to Levin, did the SEC attempt to serve him at his six appearances in federal bankruptcy court between June and August 2010. *Id.* at 12; D.E. 74-1, ¶ 3. In sum, Levin characterizes the SEC's attempts to serve Levin at his residence and elsewhere as "very few, infrequent, and ineffectual." D.E. 74 at 12.

---

[8] The parties dispute whether the SEC's process servers actually attempted service at Levin's residence, escorted by security, or whether they were stopped at Levin's community's gate. *Compare* D.E. 79-1 *and* D.E. 79-4 *with* D.E. 80 at 3 & n.3.

[9] The SEC attempted to serve Levin at his residence on May 30, 2012, at 12:40 p.m.; on May 31 at 3:15 p.m. and 8:00 p.m.; on June 1 at 12:10 p.m.; on June 4 at 8:00 a.m.; on June 7 at 1:35 p.m.; and, on June 19 at 12:10 p.m. D.E. 30 at 2-3; D.E. 79-1.

Nevertheless, the Court does not conclude it clearly erred in previously finding the SEC demonstrated good cause. Demonstrating good cause requires only a showing of good-faith, reasonable efforts to effect service. *See, e.g.*, *Williams v Publix Warehouse*, 151 F.R.D. 428, 431 (M.D. Fla. 1993). Unlike those cases cited by Levin where no attempts, *Salter v. Shoe Show, Inc.*, No. 03-0863-WS-B, 2005 WL 1027253, at *1-*2 (S.D. Ala. Apr. 1, 2005), or only half-hearted attempts, *Zachery v. Thigpen*, 895 F. Supp. 1472, 1477 (M.D. Ala. 1995), at service were made, here the SEC hired three different process servers and made approximately thirty attempts overall to serve Levin in the period leading up to the Court's granting of an extension on September 25, 2012. D.E. 79-1. Accordingly, even with the benefit of hindsight, the Court still holds that the SEC demonstrated good cause for extending the period of service.

But even if good cause had not been shown, the Court would have exercised its discretionary authority to extend service based on the information provided by the SEC. Levin argues that the statute of limitations is not yet implicated, and there is no evidence that Levin concealed a defect in service. While the Court agrees, and is also not prepared to conclude that Levin actively evaded service, these three facts alone do not require denial of an extension of the service period. Rather, the exercise of a discretionary extension requires consideration of factors specific to each case. *See Lepone-Dempsey*, 476 F.3d at 1282. Levin himself avers that he travels often for both personal and business reasons—a factor that would complicate service. *See* D.E. 74-1. Further, Levin's Co-defendant had already been served, and the interests of judicial economy would be a case-specific factor supporting a discretionary extension.

Thus, for the foregoing reasons, the Court will not vacate its previous extensions of time to serve the Complaint. Because Levin was served with the Complaint on October 5, 2012, during the period prescribed by this Court, his motion to dismiss based on insufficient service of process under

Rule 12(b)(5), Fed. R. Civ. P., must be denied.

### IV. CONCLUSION

For the above reasons, it is **ORDERED AND ADJUDGED** that Defendant Frank Preve's Amended Motion to Dismiss [D.E. 13] and the Motion of Defendant George G. Levin to Dismiss Complaint [D.E. 74] are **GRANTED IN PART and DENIED IN PART**.  The Motions are **DENIED** with respect to Count I.  The SEC, though, must strike impertinent, fraud-related allegations from Count I.  The Motions are **GRANTED** to the extent that Counts II through VI of the Complaint fail meet the pleading requirements of Rule 9(b), Fed. R. Civ. P.  However, Plaintiff SEC shall have until **February 28, 2013**, to file and serve its amended complaint.  Further, Levin's Motion to Dismiss pursuant to Rule 12(b)(5), Fed. R. Civ. P., is **DENIED**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 14th day of February 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

The Honorable Lurana S. Snow

Counsel of record