UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:12-CV-21917

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

GEORGE G. LEVIN and
FRANK J. PREVE,

        Defendants.

_____/

**DEFENDANT FRANK PREVE'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant Frank J. Preve ("Preve"), moves for summary judgment on all claims alleged against him, and in support thereof, states as follows.

**INTRODUCTION**

    The lawsuit was filed against George Levin ("Levin") and Preve alleging six counts, with only five against Preve: Count I – the sale of unregistered securities "issued by Banyon 1030-32" in violation of section 5(a) and (c) of the Securities Act; Counts II and III – fraud in the offer or sale of securities in violation of sections 17(a)(1), (2) and (3) of the Securities Act; and Counts V and VI – aiding and abetting the fraudulent misrepresentations and/or omissions of Levin, Banyon 1030-32 and BIF in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

    The record in this case, as set forth in Preve's Statement of Facts ("SOF"), clearly establishes that neither George Levin nor Frank Preve had any fraudulent intent – or the requisite scienter or recklessness – and that they instead viewed the promissory notes of the Banyon 1030-32 lenders and the investments of the Banyon Income Fund, LP ("BIF") investors as completely secure at all times. Neither George Levin nor Frank Preve had any idea that Rothstein was operating a Ponzi scheme (nor has that been alleged), instead believing that they had hit upon a

1

very profitable business model – confidential legal settlement funding in sexual harassment, whistleblower, and other employment cases. The legal settlements with Rothstein and the corresponding paperwork were vetted by their own counsel both in Nevada and in Florida, as described in the Statement of Facts filed concurrently herewith, as well as by the other forty-plus law firms, financial institutions, hedge funds, businesses, and high net-worth, sophisticated investors who conducted extensive due diligence on the legal settlement business over a two-year period.

The offering materials central to the SEC's claims – the Banyon 1030-32 promissory notes and the BIF Private Placement Memorandum (the "PPM") – show that the offered securities were exempt from registration, that Levin and Preve relied on the extensive legal advice and opinions of counsel and other professionals (by whom extensive, additional due diligence was conducted) and that Preve was never an executive officer, director or equity shareholder in any of the Banyon entities, including the two at issue here.

Preve was not acting with fraudulent intent or in a reckless or negligent manner. Levin, as managing member of Banyon 1030-32, was the "personal guarantor of all promissory notes issued," so Preve knew at all times that the notes were fully secured, even if he had not received Rothstein's phony confirmation of wire into the RRA trust account or all fully executed (phony) settlement documents. In addition, trust account balances were always verified through to the end (October 6, 2009) as being in excess of all purchased settlement deals.

Preve could only attempt to control the papering of deals, which is exactly what all of his thousands of e-mails show he was doing. The settlement packages, the papered deals, were all generated by RRA, not Preve or Levin. On one end, Preve was not a principal of any Banyon entity and therefore could not control which settlements were funded or whether funding could be withheld – the only real carrots that may have hastened Rothstein's documentation. On the other end, Preve had no way to legally control or influence Rothstein's generation of confidential documentation. Accordingly, even if Preve's failure to disclose that a small amount (wholly insignificant percentage) of deals were not papered rises to the requisite level of material omissions (and it does not), Preve acted in good faith with no fraudulent intent, recklessness or negligence through the only avenues available to his position: (a) sending e-mails pleading and imploring Rothstein to paper funded deals apace; and (b) appealing to Levin – his boss and the alleged "managing member" and 100% owner of Banyon 1030-32, which in turn was the

"general partner" of BIF, where Levin had "ultimate authority over the operations and statements" and over which Preve is not alleged to have had any authority, position or ownership, *see* DE # 86 – to persuade Rothstein to provide any missing documentation. Likewise, even if the omissions of Levin, Banyon 1030-32 and/or BIF are deemed to be material, Preve's hands were tied in such a way as to fully foreclose his ability to aid and abet, to "recklessly substantially assist" their alleged material omissions or misstatements.

It is also noteworthy that the central documents in this case – the PowerPoint presentations, the Banyon 1030-32 promissory notes and the BIF PPM – do not contain any mention of Preve whatsoever, much less a signature block or designation of any official capacity. Moreover, the detailed document packages, *see* SOF Exhibit 1, provided to investors evidence the extensive amount of professional advice from attorneys and accountants and the concomitant due diligence relied upon by Banyon.

The promissory notes themselves undermine the SEC's misrepresentation and aiding and abetting claims. The notes (as well as the related Security Agreement and Personal Guaranty of Levin and his wife) represent the entire agreement between the parties, and the lenders are not entitled to rely on any representations external to those documents, including the PowerPoint. Lenders expressly agreed to the following terms:

> This promissory note and collateral documentation being executed contemporaneously herewith (collectively, the "Loan Documentation") ***constitute and evidence the complete understanding*** between Holder [Lender] and Obligor [Banyon 1030-32]. All prior and contemporaneous discussions between the Holder and Obligor, including all representations and promises by the Holder, whether oral or written, are included in and merged in the Loan Documentation. Any modification thereof hereafter which is not in writing and signed by the Holder and Obligor shall be void….
> OBLIGOR AND, BY ITS ACCEPTANCE HEREOF, THE HOLDER, HEREBY WAIVES (1) ALL RIGHTS TO RELY ON OR ENFORCE ANY ORAL STATEMENTS MADE PRIOR TO, CONTEMPORANEOUSLY WITH OR SUBSEQUENT TO THE SIGNING OF THIS PROMISSORY NOTE…. THIS PROVISION IS A MATERIAL INDUCEMENT FOR HOLDER TO PROVIDE CREDIT TO OBLIGOR.

*See* DE # 13-3, Bates Nos. FP112310-0154059/4 through FP112310-0154059/5. The foregoing entire agreement language and the language merging or reducing "all representations or promises" to the written "Loan Documents" renders any misrepresentations or omissions in the

PowerPoint inapplicable and immaterial to investors, as evidenced by their express agreement to same upon signing such documents.  The promissory note (the alleged security at issue here) and the related Loan Documents effectively replace the PowerPoint and any other documents, discussions or representations not found in the Loan Documents.

As to the above language in all caps concerning oral statements, the alleged misrepresentations in the PowerPoint (or the verbal presentations themselves) can be deemed "oral statements" upon which lenders agreed not to rely, especially since the SEC does not even allege that the written versions of the PowerPoint were handed to investors during the presentations.  In any event, the promissory notes and related documentation "constitute and evidence the complete understanding" between the parties, making any misrepresentations in the PowerPoint wholly immaterial.  Since the promissory notes – and not the PowerPoint – are the alleged securities at issue and since all Banyon 1030-32 lenders expressly agreed that all discussions or representations are "included in" the Loan Documents, it should *only* be the representations and warranties expressly written therein that this Court should consider.

## **MEMORANDUM OF LAW**

I.     Summary Judgment Standard

Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating the absence of genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  When that burden is met, the burden then shifts to the non-moving party to demonstrate that there is a genuine issue of material fact.  Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)*.*  Issues are "genuine" only if a reasonable jury could find for the non-moving party on the evidence presented and the facts in dispute must be critical to the outcome of the case.  *See Liberty Lobby, Inc.*, 477 U.S. at 248; *Scottsdale Ins. Co. v. Cutz, LLC*, 543 F. Supp. 2d 1310, 1313 (S.D. Fla. 2007).

It is axiomatic that the most basic element of any securities violation under section 10(b) and Rule 10b-5 promulgated thereunder and under section 17(a) is that there must be material misrepresentations or materially misleading omissions.  *See SEC v. U.S. Pension Trust Corp.*, No. 07-22570-CIV, 2009 WL 2365702, at *7 (S.D. Fla. July 30, 2009).

**II.   Count I (Violation of Sections 5(a) and (c) of the Securities Act) – There is Not and Cannot Be Any Genuine Issue of Material Fact disputing that the Banyon 1030-32 Promissory Notes Were Exempt from Registration**

In Count I of its Amended Complaint, the SEC asserts that Levin and Preve violated section 5(a) and (c) of the Securities Act because "the securities and transactions issued by Banyon 1030-32 described in this Complaint" were not exempt from registration and no registration statement was filed or in effect.  DE # 86, ¶ 51.  This claim only applies to the promissory notes issued by Banyon 1030-32 and <u>not</u> to the Banyon Income Fund ("BIF") offering.  *See* Compl. ¶ 51.

In order to establish a valid claim for the sale of unregistered securities under Section 5(a) and (c) of the Securities Act, the SEC must show that:  "(1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." *S.E.C. v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004).  A defendant that was either a "necessary participant" or a "substantial factor" in the illicit sale of a security is deemed to have satisfied the first of prong (i.e., the sale requirement), as it pertains to Section 5.  *Id*. at 1215 (*citing SEC v. Friendly Power Co. LLC,* 49 F.Supp.2d 1363, 1367 (S.D.Fla.1999)).  Under the Securities Act of 1933, strict liability is imposed on any sale, or offer to sell, an unregistered security.  *S.E.C. v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004)(*quoting Swenson v. Engelstad,* 626 F.2d 421, 424 (5th Cir.1980)("[t]he Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities ... regardless of ... any degree of fault, negligent or intentional, on the seller's part").  Accordingly, scienter is not an element considered in determining liability under Section 5 of the Securities Act.

  A.   The Banyon 1030-32 Promissory Notes are Not Securities – They are Commercial Paper, exempt from Registration Under Section 3(a)(3) of the Securities Act

As indicated in the PowerPoint document packages attached as <u>Composite Exhibit A</u>, Banyon 1030-32 obtained a legal opinion providing steps to ensure that the promissory notes would be subject to the commercial paper exemption from registration of Section 3(a)(3) of the Securities Act.  Levin and Preve relied on the advice counsel and implemented the steps recommended therein.  The Gunster legal opinion and the sample promissory notes attached to the SOF, unequivocally demonstrate that they qualify for the exemption pursuant to the requirements of Section 3(a)(3).  Pursuant to the suggested steps in the Gunster legal opinion,

5

Banyon 1030-32 issued each lender a new promissory note every six months (180 days), and an accredited investor questionnaire was obtained from each note holder in accordance with counsel's recommendations.

Section 4(2) of the Securities Act exempts from registration "transactions by an issuer not involving any public offering." Rule 506 of Regulation D provides a safe harbor under that exemption, setting forth standards that can be relied upon to meet the Section 4(2) exemption, one of which is that there can be no more than thirty-five unaccredited investors.[1] As indicated in Levin and Preve's Wells submissions and in the SOF, only 19 Banyon 1030-32 note holders were unaccredited. Many of those unaccredited note holders were family members or friends of George Levin, "friends and acquaintances," as alleged in the Complaint, and some came in through a registered investment advisor. Thus, the numerical requirement of Regulation D is clearly satisfied in this case.[2]

With respect to the other conditions of Regulation D, it is axiomatic that each and every condition of Regulation D need not be satisfied to qualify for the Section 4(2) exemption. *See* Preliminary Notes to Regulation D at Note 3 (providing that Regulation D is not an exclusive election and that "the issuer's failure to satisfy all the terms and conditions of Rule 506 shall not raise the presumption that the exemption provided by section 4(2) of the Act is not available").

For these reasons, the Banyon 1030-32 notes also fall within the exemption of Section 4(2) and, thus, there was no violation of Section 5.

### III. Count II (Violation of Section 17(a)(1), (2) and (3) of the Securities Act) – Preve Did Not Act with the Requisite Scienter or Severe Recklessness or Negligence

Count II is the SEC's claim for fraud in violation of Section 17(a)(1) of the Act against Preve. Section 17(a)(1) states "It shall be unlawful for any person in the offer or sale of any securities: (1) to employ any device, scheme, or artifice to defraud." In order to establish a

---

[1] Rule 506 of Regulation D exempts offerings of securities in unlimited dollar amounts that are made to an unlimited number of accredited investors and no more than thirty-five purchasers from registration under the Act, provided that the conditions of 17 C.F.R. § 230.501-502 are met. A purchaser of such securities who is not an "accredited investor" must, by himself or with his purchaser representative(s), have such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, *or* the issuer must reasonably believe that such purchaser comes within that description immediately prior to the sale. 17 C.F.R. § 230.506.

[2] This is true even if the SEC intends to integrate Banyon 1030-32 note holders and BIF investors under Rule 502 for purposes of the purported Section 5 violations as all of the BIF investors were accredited as discussed in the PPM itself, thereby leaving the total of unaccredited investors involved at nineteen.

violation under Section 17(a)(1), "the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." *S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007) (citing *Aaron v. S.E.C.,* 446 U.S. 680, 695 (1980)).  Count II is essentially a fraudulent misrepresentation claim.  The Supreme Court, in *Aaron v. Sec. & Exch. Comm'n*, held that the plain language of Section 17(a)(1) "plainly evinces an intent on the part of Congress to proscribe **only knowing or intentional misconduct**." 446 U.S. 680, 696 (1980) (emphasis added).  The record in this case does not establish that Preve was acting with this level of scienter.

To satisfy the scienter element for Section 17(a)(1) claims, the SEC must show "either an 'intent to deceive, manipulate or defraud,' or 'severe recklessness.'"  *Mizzaro v. Home Depot, Inc.*, 544 F. 3d 1230, 1238 (11th Cir. 2008) (quoting *Bryant v. Avado Brands, Inc.*, 187 F. 3d 1271, 1284 (11th Cir. 1999)).  The United States Supreme Court held in *Aaron v. SEC*, 446 U.S. 680, 701 (1980), that scienter is a necessary element of a civil enforcement action under section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder, as well as a civil enforcement action under section 17(a)(1) of the 1933 Act.

Count III against Preve is a claim for fraud in violation of Sections 17(a)(2) and (3). Those two sections state as follows:

> It shall be unlawful for any person in the offer or sale of any securities: . . . (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

*S.E.C. v. Adler*, 137 F.3d 1325, 1332-33 (11th Cir. 1998).  In order to prove a violation under Section 17(a)(2) and (3), "the SEC need only show (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) **made with negligence**." *Id*. (citing *Aaron*, 446 U.S. at 702) (emphasis added).  Count III is essentially a negligent misrepresentation claim.

Interpreting Section 17(a)(1) through the "plain meaning of...the language of intent," the Supreme Court in *Aaron* applied the same reasoning to Sections 17(a)(2) and (3) to come to a different conclusion, holding that while 17(a)(1) actions require a showing of scienter, a showing of negligence is sufficient for an action under the latter two sections. *See Aaron v. Sec. & Exch.*

7

*Comm'n,* 446 U.S. 680, 696 (1980); *SEC v. Merchant Capital, LLC*, 481 F. 3d 747, 766 (11th Cir. 2007).

Although the Supreme Court has not yet decided whether recklessness satisfies the scienter requirement under those provisions, *see id.* at 686 n.5, the Eleventh Circuit has held that "severe recklessness" can satisfy that requirement. *See McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989). The Eleventh Circuit, however, limits severe recklessness as follows:

> Severe recklessness is limited to those **highly unreasonable** omissions or misrepresentations that involve **not merely simple or even inexcusable negligence**, but **an extreme departure** from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264 (11th Cir. 2006) (emphasis added). Preve's conduct at issue in this case does not satisfy that rigorous standard and does not even rise to the level of negligence.

Indeed, the SEC cannot establish that Preve's conduct constituted "an extreme departure" from the ordinary care standard, or that he acted with any fraudulent intent whatsoever. On the contrary, the record shows that Preve acted in good faith and believed at all times that the notes and investments were fully secure. Preve's conduct, thus, will not satisfy the severe recklessness standard necessary under sections 10(b) and 17(a)(1). And, of course, the same evidence that establishes that there was no fraudulent intent in this case also establishes that any misrepresentations or omissions (though there were none as explained above) were not material or materially misleading. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (adopting, in the section 10(b) and Rule 10b-5 context, the materiality test set forth in *TSC Industries, Inc. v.Northway, Inc.*, 426 U.S. 438 (1976), which provides, "[T]o fulfill the materiality requirement, there must be a **substantial** likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having **significantly** altered **the total mix of information made available**" (internal quotation marks omitted) (emphasis added)); *U.S. Pension Trust Corp.*, 2009 WL 2365702, at *8; *see also* 17 C.F.R. § 230.405, 240.12b-2. Because Preve believed the investments to be completely secure by the Levin guaranties and the collateral trust account balances, any such disclosure would not have "significantly altered the total mix of information" for the reasonable investor.

## IV. Preve Did Not Aid or Abet Violations of Sections 10(b) and Rule 10b-5(b) of the Exchange Act

Count V, alleged against Preve only, states that he "knowingly or recklessly substantially assisted" Levin in making material misrepresentations or omissions in violation of Section 10(b) and Rule 10b-5 of the Exchange Act, while Count VI, alleged against both Levin and Preve, states that they "knowingly or recklessly substantially assisted Banyon 1030-32's and Banyon Income Fund's violation" of those provisions. DE # 86., ¶¶ 65, 69. Both claims are identical as to Preve except for in the second he is alleged to be aiding and abetting both entities (Banyon 1030-32 and BIF).

To succeed on aiding and abetting claims, the SEC must establish the following three elements: (1) that a primary or independent securities law violation was committed by a party other than the aiding-and-abetting party; (2) that the aider and abettor was aware of or knew that his role was part of an overall activity that was improper (i.e., scienter); and (3) that the aider and abettor knowingly and substantially assisted the conduct that constitutes the violation. *Huff*, 758 F. Supp. 2d at 1354, *aff'd,* 455 Fed. Appx. 882 (11th Cir. 2012) (citing *Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1009–10 (11th Cir.1985)). As discussed above and in Preve's SOF, Preve did not have the requisite knowledge of impropriety or fraud, acted in good faith, was acting diligently on behalf of the lenders in Banyon 1030-32 and the BIF investors and did not substantially assist in any misrepresentations.

WHEREFORE, in light of the foregoing, Preve respectfully moves this Court for entry of summary judgment as to each of the SEC's claims.

Respectfully submitted,

**PODHURST ORSECK, P.A.**
*Attorneys for Frank Preve*
City National Bank Bldg.
25 W. Flagler Street, Suite 800
Miami, Florida 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382


By:_____s/Ramon A. Rasco_____
Robert C. Josefsberg
Fla. Bar No.: 040856
rjosefsberg@podhurst.com
Ramon A. Rasco
Fla. Bar No.: 0617334
rrasco@podhurst.com_____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/ s /       Ramon A. Rasco_____
RAMON A. RASCO