UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-Civ-21917-Ungaro

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

GEORGE G. LEVIN, et al.

      Defendants.
_____/

**MOTION FOR ORDER TO SHOW CAUSE**

      Defendant George Levin respectfully moves the Court for an order requiring the SEC to show cause why it should not be sanctioned for its submission of Michael Toy's false declaration and Mrs. Haefner's manipulated declaration in support of its motion for summary judgment. Mr. Levin requests that if the SEC fails to show cause, the Court strike the SEC's motion for summary judgment as to Count I of the Amended Complaint. *See* D.E. 176 at 14-19.

**BACKGROUND**

**I.  The SEC Receives and Produces Michael Toy's Investor Certification**

      On April 8, 2013, Mr. Levin produced to the SEC an investor certification form completed and signed by Michael Toy (the "Investor Certification") as Bates stamp B009809-009810. *See* Exhibit A. Banyon 1030-32, LLC ("Banyon 1030") required that individuals or entities who wanted to purchase a promissory note from Banyon 1030 (the "Note") complete the Investor Certification, in order to ensure that they were either accredited investors as defined under 17 C.F.R. § 230.501(a), or capable of evaluating the merits and risks of purchasing a note (*see* § 230.506(b)(2)(ii)). In his Investor Certification Form, Mr. Toy indicated that his net worth at the time was over $1,000,000, and thus, he was an accredited investor. *See* Ex. A at 1. The SEC itself produced the Investor Certification to Mr. Levin (using the same Bates stamp) in separate productions made on May 15, 2014 and on July 3, 2014.

## II. The SEC Submits Mr. Toy's and Mrs. Haefners' Declarations in Support of its Motion For Summary Judgment

### A. The SEC's Motion For Summary Judgment

On August 8, 2014, the SEC filed a motion for summary judgment asserting that the SEC is entitled to summary judgment as to Count I of the Amended Complaint, which alleges that Mr. Levin violated Section 5(a) and (c) of the Securities Act by failing to register the Notes. *See* D.E. 17 at 14-19. In pertinent part, the SEC argues that it is entitled to summary judgment as to this claim because there is no issue of material fact regarding Mr. Levin's Second Affirmative Defense that the Notes were exempt from registration under Section 4(2), 15 U.S.C. § 77d(a)(2). *See id.* at 16-18 (section titled "The Defendants Cannot Meet Their Burden of Demonstrating an Exemption Applies").

A short summary of the law governing Mr. Levin's Second Affirmative Defense is necessary for the purposes of this motion. Section 4(2) exempts from the Securities Act registration requirements "transactions by an issuer not involving any public offering." *See* § 77d(2). Pursuant to its authority under Section 4(2), the SEC promulgated 17 § C.F.R. 230.506 ("Rule 506") as a safe harbor provision for limited private placements. *See SEC v. Life Partners, Inc.*, 912 F. Supp. 4, 10 (D.D.C. 1996). Rule 506 provides that an offering can qualify for the exemption if there are no more than 35 unaccredited purchasers *and* those purchasers are so-called "sophisticated investors," who "ha[ve] such knowledge and experience in financial and business matters that [they] [are] capable of evaluating the merits and risks of the prospective investment, or the issuer reasonably believes immediately prior to making any sale that such purchaser comes within this description." *See* Rule 506(b)(2). *See also SEC v. Ishopnomarkup.com, Inc.*, No. 04-Civ-4057, 2007 WL 2782748, at *5 (E.D.N.Y. Sept. 24, 2007). If an investor is accredited, he or she is excluded from the number of purchasers. *See id*.

The SEC's motion for summary judgment argues that the Rule 506 exemption does not apply to Banyon 1030's Notes because two of the Note holders, Michael Toy and Julie Haefner, were unaccredited and were not capable of evaluating the merits and risks of the Notes. *See* D.E. 178 at 18. Specifically, the SEC's motion states:

> Levin and Preve admit that at least 19 investors were not accredited investors. Two Banyon investors, Julie Haeffner, a stay-at-home mom, and Michael Toy, a bartender, have provided declarations stating they: had net worths of less than $1,000,000 and income below $200,000 in the year they invested and the prior two years, and their securities experience is limited. Thus, they are not accredited investors. Further, both Haeffner and Toy state that neither Levin nor Preve, nor anyone else associated with Banyon

> made any inquiry about their prior financial experience, knowledge of financial investments, or financial condition. Accordingly, these undisputed facts show that the Defendants cannot prove that each investor meets the standard in Rule 506(ii), and therefore they cannot succeed in their affirmative defense that Banyon was a private offering. Accordingly, the Court should enter summary judgment on Levin's Second Affirmative Defense. . . .

*See id*. at 18.

B.  The Toy Declaration

As specified above, the SEC submitted a declaration by Mr. Toy, executed on June 5, 2014, in support of its argument that Banyon 1030 issued Notes to unaccredited and so-called "unsophisticated" investors. *See* D.E. 172-17. The declaration is executed with a signature that appears to be nearly identical to the one found on the Investor Certification. *Compare* D.E. 172-17 (Toy Declaration) *with* Ex. A (Toy Investor Certification). In his declaration, Mr. Toy stated in relevant part:

- That the full extent of the documents provided to him by Banyon 1030 was a private fund offering document, a settlement funding powerpoint, Banyon's consolidated financial statements, a promissory note, and a Banyon bank account portfolio, which he enclosed as exhibits (*see id*. at ¶ 10 and Exhibits 1-5);
- That prior to his investment in the Note, he was not required to give any information relating to his previous financial experience, knowledge of financial investments, *or his financial condition* (*see id*. at ¶¶ 13, 14) (emphasis added);
- That he does not consider himself a sophisticated investor (*see id*. at ¶ 16);
- That at the time of his purchase of the Note, his annual income was less than $200,000, less than $200,000 in each of the last two years, and that his net worth was less than $1,000,000 (*see id*. at ¶¶ 19-21);
- That he did not consult with an investment advisor regarding purchasing the Note, and that he relied on information provided by Mr. Preve (*see id*. at ¶ 21); and
- That the statements in the declaration represent his "full knowledge and understanding of the events that occurred regarding [his] experience with Banyon up to the point that he [purchased the Note] (*see id*. at ¶ 22).

The declaration did not discuss or reference the fact that Mr. Toy submitted an Investor Certification to Banyon 1030, which would negate the majority of his assertions and the utility of the declaration with respect to the SEC's motion for summary judgment on Count I. The declaration appears to have been prepared by counsel for the SEC, because it is prepared in the

same format and using much of the same language found in Mrs. Haefner's declaration. *Compare* D.E. 172-17 (Toy Declaration) *with* D.E. 172-18 (Haefner Declaration).

      C.      The Haefner Declaration

The SEC also submitted a declaration by Julie Haefner in support of its argument regarding the application of the Rule 506 exemption. In pertinent part, Mrs. Haefner's declaration, which was also executed on June 5, 2014, stated that she and her husband purchased a Note from Banyon 1030 and that they do not consider themselves "sophisticated investors." *See* D.E. 172-18 at ¶ 9.

Counsel for Mr. Levin spoke to Mrs. Haefner. According to Mrs. Haefner, and as stated in her declaration in support of Mr. Levin's response to the SEC's motion for summary judgment, in its efforts to secure her June 2014 declaration, SEC attorneys never explained to her what it meant to be a "sophisticated investor." *See* D.E. 190-31 at ¶ 3 (the "August 2014 Declaration"). Rather, the SEC attorneys asked whether she or her husband had finance or economics degrees, creating an impression that such training was necessary in order to be a "sophisticated investor." Nor did the SEC ask Mrs. Haefner whether she and her husband believed that when they purchased the Note, they had sufficient knowledge and experience to evaluate the merits and risks of the Note. *See id*. In fact, Mrs. Haefner says that she and her husband carefully examined the Note, and felt fully capable of evaluating the merits and risks of that purchase. *See id*. ¶¶ 4,6.

### ARGUMENT

A federal court possesses the inherent power to sanction parties who litigate in bad faith. *See Kornhauser v. Comm. of Social Security*, 685 F.3d 1254, 1257 (11th Cir. 2012); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) ("The key to unlocking [the] court's inherent power is a finding of bad faith."). Bad faith exists "when the court finds that a fraud has been practiced upon it . . . or where a party or attorney knowingly or recklessly raises a frivolous argument. *See Allapattah Services, Inc. v. Exxon Corp*., 372 F.Supp.2d 1344, 1373 (S.D.Fla. 2005) (citation omitted). "[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *See Qantum Comm. Corp. v. Star Broadcasting, Inc.*, 473 F.Supp.2d 1249, 1269 (S.D.Fla. 2007). "[A] false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a . . . frivolous purpose." *See id.* Indeed, the need for sanctions is heightened when the misconduct relates to the pivotal or "linchpin" issue in the case. *See id*. This inherent power includes the authority to dismiss an action. *See Quiroz v. Superior Bldg. Maintenance, Inc*., No. 06-21594-Civ, 2008 WL 3540599, at *5 (S.D.Fla. Aug. 12, 2008).

Based upon the facts here, it appears that the SEC may have engaged in bad faith conduct triggering the Court's inherent power to sanction. The SEC appears to have drafted, obtained, and submitted a false declaration by Mr. Toy with respect to a crucial aspect of its case—whether Mr. Toy was an accredited or sophisticated investor under Rule 506. Further, Mrs. Haefner's June 2014 Declaration appears to have been obtained through the omission of crucial information.[1]

These problematic declarations are critical for the SEC's case against Mr. Levin at this stage of the proceedings. Specifically, they pertain to its claim that Mr. Levin violated Section 5 of the Securities Act, a cause of action under which the SEC's burden is less considerable than under its securities fraud claims in this action. *See SEC v. Friendly Power Co.*, 49 F.Supp.2d 1363, 1367 (S.D.Fla.1999) ("Neither negligence nor scienter is an element of a prima facie case under Section 5 of the Securities Act."). By submitting these seemingly false and manipulated declarations, the SEC believed it could show that Banyon 1030's Note offering did not qualify for the Rule 506 exemption and, thus, summary judgment is appropriate. In other words, these declarations were submitted to remove this claim from the province of a jury, and to attempt to obtain a multi-million dollar disgorgement award in connection with the total amount of Notes issued by Banyon 1030.

Under these facts, Mr. Levin respectfully requests that the Court investigate this matter under its inherent power. Specifically, he requests that the Court enter an order requiring the SEC to show cause as to:

- Why it has not engaged in bad faith conduct in its submission of Mr. Toy's declaration and Mrs. Haefner's June 2014 declaration in support of its motion for summary judgment; and
- Why the Court should not strike its motion for summary judgment as to Count I of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Mr. Levin respectfully requests that the Court enter an order requiring the SEC to show cause as specified above.

---

[1] It should be noted that the SEC has previously been sanctioned by the Court in this proceeding. *See* Order Granting In Part Motion For Sanctions, D.E. 73 (finding that "SEC had numerous opportunities to cure the defects in its responses to the Defendant's discovery requests, but did not do so until after this Court denied its motion to strike the instant motion" and ordering SEC to pay attorney's fees to Mr. Levin).

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Mr. Levin has conferred with the SEC regarding this motion, and the SEC objects to the relief sought herein.  Mr. Preve joins in the motion.

Respectfully submitted,

/s/ Daniel Lawrence Rashbaum
**MARCUS NEIMAN & RASHBAUM LLP**
2 S. Biscayne Blvd., Suite 1750
Miami, Florida 33131
Tel: 305-400-4260
Fax: 866-780-8355
Daniel Lawrence Rashbaum
Fla. Bar No. 75084
drashbaum@mnrlawfirm.com
Jeffrey E. Marcus
Fla. Bar No. 310890
jmarcus@mnrlawfirm.com
Michael A. Pineiro
Fla. Bar No. 041897
mpineiro@mnrlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2014, I served the foregoing document on all counsel of record identified on the below list in accordance with the Local Rules and via electronic mail:

Amie Riggle Berlin
United States Securities and Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131
305-982-6300
Fax: 305-536-4154
berlina@sec.gov


Robert Josefsberg
Ramon Alvaro Rasco
Podhurst Orseck Josefsberg
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
305-358-2800
Fax: 358-2382
rjosefsberg@podhurst.com
rrasco@podhurst.com
*Counsel for Defendant Frank Preve*


/s/Daniel Lawrence Rashbaum