UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-Civ-21917-Ungaro

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

GEORGE G. LEVIN, et al.

    Defendants.
_____/

### DEFENDANT GEORGE LEVIN'S RESPONSE TO MOTION FOR RECONSIDERATION AND, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER

Defendant George Levin respectfully submits this response memorandum in opposition to the SEC's motion for reconsideration of the Court's Order on Summary Judgment (D.E. 224).

### BACKGROUND

On August 8, 2014, the SEC moved for summary judgment on all counts of its amended complaint. *See* SEC Motion for Summary Judgment (D.E. 176). In its briefing papers, the SEC did not argue that the Rule 508 good faith exemption does not apply to SEC enforcement actions under Section 20 of the Act. Instead, acknowledging the applicability of Rule 508(a) to this action, the SEC argued that Rule 508(a) good faith compliance does not apply here due to alleged general solicitation. *See* SEC Reply Mem. in Supp. of Motion for Summary Judgment (D.E. 208) at 8.

On October 6, 2010, the Court entered an order granting the SEC's motion for summary judgment as to two of Mr. Levin's affirmative defenses, and denying the motion as to all of the SEC's causes of action, including its claim that Mr. Levin violated Section 5 of the Securities Act, 15 U.S.C. § 77e(a). *See* Order at 42. Pertinent to this motion, the Court found that Mr. Levin failed to establish a genuine issue of material fact regarding the application of the registration exemption set forth in Rule 506 of Regulation D, 17 C.F.R. § 230.506. The Court reached this conclusion because it found that Mr. Levin did not submit evidence authenticating an investor certification executed by Michael Toy, an investor in Banyon 1030-32, LLC ("Banyon 1030"), and, thus, failed to submit evidence creating a genuine dispute of fact that Mr. Toy was an accredited investor under Rule 501(a) (and thereby excluded from the number of "purchasers" of Banyon 1030 promissory notes (*see* Rule 501(e)(iv)), or that he qualified as a "sophisticated

investor" under Rule 506(b)(2)(ii). *See* Order at 22-25. However, citing several factors, the Court found that a genuine issue of fact exists whether Mr. Levin can claim the Rule 506 registration exemption via Rule 508, which provides a good faith safe harbor for insignificant deviations from Regulation D under certain circumstances. *See id*. at 26-28. As a result, the Court denied the SEC's motion for summary judgment that Mr. Levin violated Section 5.

## ARGUMENT

A. STANDARD ON MOTION FOR RECONSIDERATION

A motion for reconsideration under Fed. R. Civ. P. 60 can only be granted if there is (1) an intervening change in controlling law, (2) newly discovered evidence, or (3) the need to correct clear error or prevent manifest injustice. *See Kaufman v. Pfizer Pharm., Inc*., No. 02-22692-Civ-Ungaro, 2011 WL 10501233, at *1 (S.D.Fla. Aug. 10, 2011). "A motion for reconsideration is not an opportunity to rethink what the Court already thought through-rightly or wrongly." *See Insured Deposits Conduit, LLC v. Index Powered Fin. Serv.*, No. 07-22735-Civ-Ungaro (S.D.Fla. Jul. 28, 2008) (citation and quotation omitted). In moving for reconsideration a party "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *See id*. (citation and quotation omitted). "A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration." *See id*. (citation and quotation omitted).

B. THE COURT'S RULING REGARDING RULE 508 IS CORRECT

The Court's application of the Rule 508(a) good faith provision to this action is unquestionably correct. Rule 508 provides in full:

> (a) **A failure to comply** with a term, condition or requirement of § 230.504, § 230.505 or § 230.506 will not result in the loss of the exemption from the requirements of section 5 of the Act for any offer or sale to a particular individual or entity, if the person relying on the exemption shows:
>
>> (1) **The failure to comply** did not pertain to a term, condition or requirement directly intended to protect that particular individual or entity; and
>>
>> (2) **The failure to comply was insignificant** with respect to the offering as a whole, provided that any **failure to comply** with paragraph (c) of § 230.502, paragraph (b)(2) of § 230.504, paragraphs (b)(2)(i) and (ii) of § 230.505 and paragraph (b)(2)(i) of § 230.506 shall be deemed to be significant to the offering as a whole; and
>>
>> (3) A good faith and reasonable attempt was made to comply with all applicable terms, conditions and requirements of § 230.504, § 230.505 or § 230.506.

>    (b) A transaction made in reliance on § 230.504, § 230.505 or § 230.506 shall **comply** with all applicable terms, conditions and requirements of Regulation D. Where an exemption is established only through reliance upon paragraph (a) of this section, **the failure to comply** shall **nonetheless** be actionable by the Commission under section 20 of the Act.

*See* 17 C.F.R. § 230.508 (emphasis added). Based on the plain language of the regulation, especially when focusing on the emphasized text and the use of the phrase "failure to comply" as it is first introduced in Rule 508(a), it clear that Rule 508(b) has nothing to do with "failure to comply" with Section 5 of the Act. Rather, Rule 508(b) means that when an exemption is established under Regulation D only through the Rule 508(a) safe harbor, the issuer's "failure to comply" with **Rules 504-506 of the Regulation D** exemption— though not preclusive of the application of the exemption — is "nonetheless" actionable under Section 20 of the Act. In other words, although certain failures to comply with Rules 504-506 of Regulation D may not prevent application of the Rule 508(a) good faith exemption because the conditions of Rule 508(a) are satisfied, those specific instances of non-compliance with Regulation D remain actionable by the SEC. Thus, for instance, in this case, if a jury finds that the Rule 508(a) exemption applies to Banyon 1030's offering based on the nature of any purported failures by Banyon 1030 to comply with Rule 506, the SEC can "nonetheless" bring claims under Section 20 relating to those **specific** instances of non-compliance with the regulation.

      The SEC incorrectly asserts that Rule 508(b) prohibits the application of Rule 508(a) to SEC actions under Section 20 because it interprets the phrase "failure to comply" set forth in Rule 508(b) as pertaining to compliance with Section 5 of the Act. There are several reasons why this reading of the regulation is completely incorrect.

      *First*, when interpreting a law or regulation, Courts must be "guided not by a single sentence or member of a sentence, but look[] to the provisions of the whole law, and to its object and policy." *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 95 (1993). In doing so, Courts employ a fundamental rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *See Sullivan v. Stroop*, 496 U.S. 478, 484-85 (1990); *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."). However, in its motion, the SEC evaluates Rule 508 in direct contravention of these cardinal rules of interpretation. The SEC did not analyze Rule 508(b) in the overall context of Rule 508, or even discuss the language in Rule 508(a). Thus, in giving meaning to Rule 508(b), the SEC conspicuously overlooked that the phrase "failure to comply" is <u>first</u> introduced in Rule

508 in paragraph (a) and in regards to compliance with Rules 504-506 of Regulation D. It also overlooked that the phrase "failure to comply" is used <u>four</u> separate times in Rule 508(a), and the word "comply" <u>five</u> separate times, each time unambiguously in the context of non-compliance with Rules 504-506 of Regulation D, and not in the context of compliance with Section 5.

Given Rule 508(a)'s repeated reference to "failure to comply" in the context of compliance with Rules 504-506 of Regulation D, it follows that the phrase "failure to comply" in Rule 508(b) is used and must be interpreted in the same manner — relating to compliance with Regulation D, and not to compliance with Section 5 of the Act or anything else. *See Ratzlaf*, 510 U.S. at 143; *see also Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013). Indeed, if the SEC intended for Rule 508(b) to address non-compliance with Section 5 of the Act, then it simply would have expressly said so. This is especially true given that Rule 508(a) explicitly references Section 5 in stating that a "failure to comply" with Rule 504-506 will not result "in the loss of the exemption from the requirements of section 5 of the Act" if certain conditions are satisfied. The usage of the term "Section 5 of the Act" demonstrates that in writing this regulation, when the SEC sought to reference Section 5, it did so expressly and not by implication (as suggested by the SEC here), and that the omission of the phrase "Section 5 of the Act" in Rule 508(b) was intentional. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *United States v. Slaughter*, 708 F.3d 1208, 1216 (11th Cir. 2013).

Moreover, the SEC's proposed interpretation of Rule 508(b) leads to an absurd result. In ignoring paragraph (a) — and the repeated clear meaning of the phrase "failure to comply" — the SEC submits an interpretation of Rule 508(b) that contravenes the basic object of the regulation (*i.e.*, to provide a good faith safe harbor for insignificant deviations from Regulation D), and creates very confusing policy (*i.e.*, that issuers can claim a registration exemption under Rule 508 if they are sued by private plaintiffs, but not in an SEC enforcement action). As a result, even if there is some purported ambiguity regarding the meaning of Rule 508(b), which there is not, the rule must be read as pertaining to compliance with Rules 504-506 of Regulation D because it is consistent with the aim of the regulation, and the SEC's interpretation must be discarded as incompatible with Rule 508(a). S*ee United Sav. Ass'n v. Timbers of Inwood Forest Assoc*, 484 U.S. 365, 371 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law").

*Third*, the SEC's proposed interpretation of Rule 508 creates significant superfluous and unnecessary language in the regulation. "[S]tatutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009); *see also Astoria Fed. Savings & Loan Ass'n v. Solomino*, 501 U.S. 104, 112 (1991). Here, the SEC's interpretation of Rule 508 renders entire sentences in the regulation unnecessary and misplaced. Specifically, if one is to accept the SEC's interpretation, it would render the entire first sentence of Rule 508(b) — providing that "[a] transaction made in reliance on § 230.504, § 230.505 or § 230.506 shall comply with all applicable terms, conditions and requirements of Regulation D" — superfluous. The inclusion of this first sentence only adds meaning to Rule 508(b) if Rule 508(b) is interpreted as permitting the SEC to bring Section 20 actions for violations of Rules 504-506 of Regulation D — not of Section 5 of the Act — even where Rule 508 good faith compliance applies. The sentence is unnecessary otherwise. Further, the part of Rule 508(b) stating, "Where an exemption is established only through reliance on paragraph (a) of this section . . . ," is meaningless under the SEC's interpretation because it adds nothing substantive to the subsequent portion of the sentence (" . . . the failure to comply shall nonetheless be actionable by the Commission under section 20 of the Act."). The second portion of that sentence could stand alone under the SEC's interpretation; the only way that the first part of that sentence is necessary is if it was intended to be qualified by the second part of the sentence. Finally, the word "nonetheless" in the second sentence of Rule 508(b) is rendered unnecessary and out of place unless it is intended to provide that the SEC can pursue a Section 20 action <u>even if</u> a Rule 508(a) exemption applies.

*Fourth*, the SEC's March 14, 1989 interpretive release adopting Rule 508(b), the sole SEC regulatory interpretation cited by the SEC in its motion, unmistakably confirms this Court's interpretation of Rule 508(b), and shows the SEC's proposed interpretation to be a farce. *See* Regulation D, SEC Release No. 6,825, 43 SEC Docket 704 (Mar. 14, 1989). The adoptive release provides that Rule 508 "specifies that any **failure to comply with a provision of Regulation D is actionable by the Commission under the Securities Act**" — the exact interpretation advanced by Mr. Levin above. *See id*. at *1 (emphasis added). The release nowhere states that the phrase "failure to comply" pertains to Section 5 of the Act.

*Fifth*, despite the adoption of Rule 508 over 25 years ago, the SEC has failed to proffer the Court even one published decision in support of its position. Not one. Conversely, in one of the main cases cited by the SEC in its summary judgment papers, *SEC v. Mattera*, a SEC enforcement action, the court provides that Rule 508 pertains to a determination of whether a defendant

5

complied with Rule 506. *See* No. 11 Civ. 8323 (PKC), 2013 WL 6485949, at *11 (S.D.N.Y. Dec. 9, 2013) (citing Rule 508) ("If it is later shown that a purchaser did not meet the requirements of accreditation, the exemption will not be lost if the issuer can show that it **acted in good faith** in attempting to comply with the requirements and the failure to comply was not significant "'with respect to the offering as a whole.'") (emphasis added). Indeed, in *Mattera*, the Court closely analyzed whether the defendant violated the Rule 502(c) prohibition against "general solicitation" because violation of that Regulation D prohibition is considered "significant" under Rule 508 and precludes good faith compliance under Rule 508 (*see* Rule 508(a)(2)). *See id.* (finding that Rule 506 outright prohibits "general solicitation" by citing to Rule 508).

Finally, a trial court's recent decision on a motion *in limine* in *SEC v. Ishopnomarkup.com*, No. 04-cv-4057 (E.D.N.Y.), the SEC's main authority in support of its motion — and the supposed impetus for the SEC's request for reconsideration — is not persuasive authority in the least. The SEC argues that the trial transcript enclosed with its motion is persuasive as to whether Rule 508(a) applies to SEC enforcement actions. However, the SEC fails to note that the SEC is litigating against a *pro se* defendant in that case. *See* SEC Motion for Reconsideration, Exhibit 2. Further, and respectfully, Judge Hurley's finding regarding Rule 508(b) fails to provide any in-depth analysis of the entirety of the rule, and does not rely upon any case law supporting his conclusion. Respectfully, Judge Hurley's error should not be repeated here.

In sum, the Court must deny the SEC's motion for reconsideration for all of these reasons.

**C.    ALTERNATIVELY, THE COURT SHOULD RECONSIDER ITS RULING REGARDING MR. LEVIN'S COMPLIANCE WITH RULE 506 ABSENT GOOD FAITH COMPLIANCE**

Alternatively, the Court's Order denying the SEC's motion for summary judgment as to its Section 5 claim should remain undisturbed because, on this record, there is a genuine issue of fact as to whether Mr. Levin complied with Rule 506 absent the Rule 508 good faith provision. As noted in the Court's Order, the SEC sought to demonstrate that there is no genuine issue of material fact that the Banyon 1030 offering complied with Rule 506(b)(2)(ii) by submitting declarations by Michael Toy and Julie Haefner stating that, at the time they invested in the notes, they were neither accredited investors nor sophisticated purchasers. *See* Order at 22. Because Mrs. Haefner submitted a declaration in connection with Mr. Levin's response memorandum indicating that she was in fact capable of evaluating the merits and risks of the notes, the SEC's argument regarding compliance with Rule 506(b)(2)(ii) hinged solely on Mr. Toy's declaration. In contesting Mr. Toy's declaration, Mr. Levin submitted an investor certification that appeared to bear Mr. Toy's signature and that indicated to Banyon 1030 that he was an accredited investor.

Ultimately, in pertinent part, the Court found that because Mr. Toy's investor certification was not authenticated, it could not be considered as evidence in the record and, thus, there was no genuine issue of fact that Mr. Toy was not an accredited investor or sophisticated purchaser — thereby leaving no genuine issue of fact that Banyon 1030's offering did not meet the Rule 506(b)(2)(ii) requirement regarding the nature of purchasers in a Rule 506 offering. *See* Order at 24-25. Thus, the issue of the authentication of the Toy investor certification was the key issue in that particular ruling.

Respectfully, Mr. Levin submits Mr. Toy's investor certification should have been considered evidence at the summary judgment stage based upon the complete record here. Under Rule 56(c), the Court may consider the entirety of the evidentiary record when deciding a motion for summary judgment, and is not limited to evidence cited in the summary judgment papers. In connection with the SEC's response to Mr. Levin's motion for order to show cause, the SEC submitted a declaration by Michael Toy executed on September 4, 2014. *See* Response Mem. to Motion for Order to Show Cause, Exhibit J (D.E. 212-10). In that declaration, Mr. Toy acknowledged that the signature on the investor certification at issue is his — thereby at a minimum authenticating the signature on the form. *See id*. at ¶ 6.

Rule 501(a) of Regulation D defines an "accredited investor" as "any person who comes within [certain categories], or who the issuer reasonably believes comes within any of the [those] categories." *See* Rule 501(a). Thus, a determination of whether someone is an accredited investor is not only based on an objective determination of their satisfaction of one of several categories, but also includes a subjective component — whether there was a reasonable belief that the investor satisfied one of those categories. Mr. Levin submits that, based on the partial authentication of Mr. Toy's investor certification discussed above, there is a genuine issue of fact as to whether Banyon 1030 reasonably believed that Mr. Toy was an accredited investor as indicated in the investor certification form at issue, and that, as a result, summary judgment is not appropriate on the Banyon 1030 offering's compliance with Rule 506(b)(2)(ii).

## CONCLUSION

For the foregoing reasons, Mr. Levin respectfully requests that the Court deny the SEC's motion for reconsideration or, in the alternative, enter an order reconsidering its finding that there is no genuine dispute of fact that Mr. Levin cannot meet the requirements under Rule 506(b)(2)(ii) regarding the Banyon 1030 note offering.

7

Date: October 9, 2014

    Respectfully submitted,

    <u>/s/ Daniel Lawrence Rashbaum</u>
    **MARCUS NEIMAN & RASHBAUM LLP**
    2 S. Biscayne Blvd., Suite 1750
    Miami, Florida 33131
    Tel: 305-400-4260
    Fax: 866-780-8355
    Daniel Lawrence Rashbaum
    Fla. Bar No. 75084
    drashbaum@mnrlawfirm.com
    Jeffrey E. Marcus
    Fla. Bar No. 310890
    jmarcus@mnrlawfirm.com
    Michael A. Pineiro
    Fla. Bar No. 041897
    mpineiro@mnrlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2014, I served the foregoing document on all counsel of record identified on the below list in accordance with the Local Rules and via electronic mail:

Amie Riggle Berlin
United States Securities and Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131
305-982-6300
Fax: 305-536-4154
berlina@sec.gov


Robert Josefsberg
Ramon Alvaro Rasco
Podhurst Orseck Josefsberg
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
305-358-2800
Fax: 358-2382
rjosefsberg@podhurst.com
rrasco@podhurst.com
*Counsel for Defendant Frank Preve*


/s/Daniel Lawrence Rashbaum