FILED BY *HH*

Deputy Clerk

Apr 19, 2017

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 19, 2017

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  15-14375-BB
Case Style: Securities and Exchange Commis v. George Levin
District Court Docket No: 1:12-cv-21917-UU

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 15-14375

_____

District Court Docket No.
1:12-cv-21917-UU

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff - Appellee,

versus

GEORGE G. LEVIN,

Defendant - Appellant,

FRANK PREVE,

Defendant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: February 23, 2017
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 15-14375

_____

D.C. Docket No. 1:12-cv-21917-UU

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff – Appellee,

versus

GEORGE G. LEVIN,

Defendant – Appellant,

FRANK PREVE,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 23, 2017)

Before MARCUS and DUBINA, Circuit Judges, and GOLDBERG,[*] Judge.

DUBINA, Circuit Judge:

Defendant-Appellant George G. Levin ("Levin") appeals the district court's judgment in favor of the Plaintiff-Appellee Securities and Exchange Commission ("SEC") on its action charging Levin with securities violations. The action centers on Levin's sales of securities in connection with a large Ponzi scheme. The SEC brought suit against Levin alleging violations of the registration provisions of the Securities Act and fraud in the sale of securities in violation of the Securities and Exchange Act ("Acts"). Levin asserted affirmative defenses that the sales were exempt from the registration provisions. The district court awarded summary judgment to the SEC, finding no merit to Levin's affirmative defenses, and a jury found Levin liable on the fraud claims. Levin appeals the district court's grant of summary judgment to the SEC on Count I, the failure to register securities pursuant to Section 5 of the Securities Act, and he also challenges claimed errors that occurred during trial. Based on our review of the record, reading the parties' briefs, and having the benefit of oral argument, we affirm in part, and reverse in part; specifically, we reverse the grant of summary judgment on Count I and remand this case for further proceedings consistent with this opinion.

---

[*]Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

# I. BACKGROUND

A. *Facts*

The controversy in this case arises from the operation and eventual collapse of Scott Rothstein's ("Rothstein") Ponzi scheme.  Rothstein used his law firm, Rothstein, Rosenfeldt and Adler P.A. ("law firm"), to operate his scheme by soliciting investors to purchase purported confidential settlement agreements supposedly reached in sexual harassment or whistleblower lawsuits.  No such agreements existed, and the investors were paid with funds from other investors.  The scheme collapsed in October 2009, and Rothstein pled guilty to a five-count information charging one count each of racketeering conspiracy, conspiracy to commit money laundering, conspiracy to commit mail and wire fraud, and two counts of wire fraud.

Levin's involvement in the Ponzi scheme began in 2007 when he invested in the purported settlements.  Initially, Levin used his personal funds to invest in the scheme, but he soon began using funds from his dormant legal entity, Banyon 1030-32 ("Banyon").  Frank Preve ("Preve") was the daily operations manager of Banyon, and he handled the paperwork for the investments.  Rothstein would email Banyon details regarding the bogus settlements that Banyon could purchase, and Levin determined the parameters of the settlements that Banyon would purchase.

In order to purchase more of the purported settlements, Banyon offered investors promissory notes, and Banyon used funds from the notes to purchase additional settlements.  Banyon repaid the notes with the returns from those settlements. Levin personally guaranteed the notes.  Levin and Preve initially marketed the notes to their friends and family but soon began to solicit other potential investors. Ultimately, Banyon issued notes to approximately 90 investors, for an approximate total amount of $50 to $58 million.  The SEC did not receive a registration statement with respect to these promissory notes.

To obtain additional funding, Banyon established lines of credit with New York-based hedge funds to finance settlement purchases.  These hedge funds set up separate accounts with Rothstein, and the hedge fund managers independently decided whether they would fund certain settlement purchases.  Banyon also utilized the Banyon Income Fund, a limited partnership with Banyon as the general manager, to raise approximately $100 million from an estimated 83 investors to purchase purported settlement agreements.  The law firm established a dedicated trust account for the Banyon Income Fund at the TD Bank ("TD Bank"). Eventually, the scheme collapsed.

B. *Procedural History*

The SEC filed suit against Levin in May 2012, and later amended its complaint.[1]  In the amended complaint, the SEC alleged that Levin sold unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act, and that Levin engaged in fraud in violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  In his answer, Levin asserted that the Banyon promissory notes were exempt from registration under Section 4(a)(2) either because they did not involve any public offering as demonstrated by compliance with Rule 506(b) of Regulation D, or because they were protected by the safe harbor provision of Rule 508 of Regulation D.  Levin also asserted that he did not profit from any of the purported conduct and, therefore, disgorgement was not a proper remedy.

The parties both moved for summary judgment, and the district court denied Levin's motion in full and denied portions of the SEC's motion as well.  The district court, however, did partially grant the SEC's motion, finding that the Banyon notes were not exempt under Rule 506, but determining that there was a triable issue of fact as to whether the notes were exempt under the safe harbor provision of Rule 508.  The SEC filed a motion for reconsideration as to whether

---

[1] Preve was also named as a defendant, but the SEC settled its case with Preve via consent judgment.  Hence, Preve is not a party to this appeal.

the notes were exempt, and the district court granted the motion, finding that the safe harbor provision in Rule 508 did not protect defendants against enforcement actions brought by the SEC.

The district court began a trial on the securities fraud claim without Levin's presence because, that morning, Levin's counsel notified the court that Levin had been admitted to the hospital in Panama where he had traveled for business. Levin was unable to return by the start of the trial, and his counsel moved for a one-week continuance. The SEC objected, mainly on fiscal grounds, but also because a continuance would create problems with witness availability. The district court denied the motion. Levin was absent for the first two days of trial, which included jury selection, opening statements, the SEC's presentation of its first witness, and the beginning testimony of the SEC's second witness.

At the end of the trial, the jury found Levin liable on all counts. The SEC moved for a total disgorgement award of $106 million. Levin responded that any disgorgement should be offset by payments made to investors from Banyon and the Banyon bankruptcy trustee. The district court determined that a disgorgement award of $40.1 million was appropriate because it reflected the amounts actually received by Levin and his family members as a result of Levin's wrongdoing. The

district court entered final judgment against Levin on July 31, 2015, and Levin timely filed a notice of appeal.

## II. ISSUES

1. Whether the district court erred in granting summary judgment to the SEC because it found the Banyon note offerings were not eligible for a Regulation D exemption from the registration requirements of Section 5 of the Securities Act.

2. Whether the district court abused its discretion in denying Levin's motion for a continuance on the basis that he was unable to attend the first two days of trial due to an unexpected hospitalization.

3. Whether the district court abused its discretion in including certain gains by Levin's family members in its $40.1 million disgorgement order, or in failing to reduce that disgorgement based on certain prior and future payments by Banyon's bankruptcy trustee.

4. Whether the district court plainly erred in questioning Levin and another witness during trial.

## III. STANDARDS OF REVIEW

We review de novo a district court's order on summary judgment. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014). "In

so doing, we draw all inferences and review all evidence in the light most favorable to the non-moving party." *Id.*

We review for abuse of discretion the district court's ruling on a motion for continuance. *See Romero v. Drummond Co. Inc.*, 552 F.3d 1303, 1319–20 (11th Cir. 2008). The denial of a request for continuance does not constitute an abuse of discretion unless it is arbitrary and unreasonable and severely prejudices the moving party. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1296 (11th Cir. 2005).

We review for abuse of discretion a district court's calculation of disgorgement. *See SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014).

We also review for abuse of discretion a district court's questioning of witnesses under Federal Rule of Evidence 614. *See generally United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004). When a party fails to object at trial to the district court's conduct, however, we review for plain error only. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 812 (11th Cir. 2015).

## IV. ANALYSIS

A. *Summary Judgment*

1. Statutory and Regulatory Framework

Section 5 of the Securities Act prohibits the use of any means of interstate commerce or the mails to offer to sell or offer to buy any security without having

first filed a registration statement with the SEC as to such security.  15 U.S.C.

§ 77e(a), (c) (2012).  To establish a prima facie case for a Section 5 violation, the

SEC must prove three elements: "(1) no registration statement was in effect as to

the securities, (2) the defendant sold or offered to sell these securities, and (3)

interstate transportation or communication and the mails were used in connection

with the sale or offer of sale."  *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137,

155 (5th Cir. 1972).[2]  The Securities Act does exempt from its application certain

types of securities and securities transactions "where there is no practical need for

its application or where the benefits are too remote."  *Id.*  These exemptions must

be narrowly viewed because, as remedial legislation, the Securities Act is entitled

to a broad construction.  *Id.*

The Code of Federal Regulations Rule 506 ("Rule 506") implements the

statutory exemption involving securities that are not public offerings, such as the

ones at issue here.  *See* 17 C.F.R. § 230.506 (2016); *see also* 15 U.S.C. § 77d(a)(2)

(2012) (providing that Section 4(2) of the Securities Act exempts from registration

"transactions by an issuer not involving any public offering").  The private offering

exemptions are known as Regulation D, which is a series of rules that establish

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that decisions of the Fifth Circuit Court of Appeals prior to September 30, 1981, are binding on the Eleventh Circuit Court of Appeals).

three separate, distinct private offering exemptions from the registration

requirements of the Securities Act.  To meet the conditions of Rule 506, an offer or

sale must satisfy the terms of Rules 501 and 502, and the issuer must reasonably

believe that there are no more than 35 purchasers of securities.  17 C.F.R. §

230.506(b)(1), (2)(i).  Accredited investors are not counted toward the 35.  *Id.* §

230.501(e).  An accredited investor is any person "whose individual net worth . . .

exceeds $1,000,000."  *Id.* § 230.501(a)(5) & (6).  Rule 502 sets out certain

requirements for offerings made under Rule 506(b), including a provision requiring

certain information be provided to investors before the sale of the securities and a

provision limiting the manner by which the issuer can sell the securities.  *Id.* §

230.502(b), (c), and (d).

To obtain the exemption, there is another condition that must be satisfied,

and it involves the nature of the purchasers.  Rule 506(b)(2)(ii) states that

> Each purchaser who is not an accredited investor either alone or with
> his purchaser representative(s) has such knowledge and experience in
> financial and business matters that he is capable of evaluating the
> merits and risks of the prospective investment, or the issuer
> reasonably believes immediately prior to making any sale that such
> purchaser comes within this description.

17 C.F.R. § 230.506(b)(2)(ii).  The issuer is to take reasonable steps to verify that a

purchaser of a security sold in an offering under section (c) is an accredited

investor.  *Id.* § 230.506(c).  The offeror can verify a purchaser's accredited status

on the basis of income or net worth.  *See id*. § 230.506(c)(2)(ii)(A) & (B).

Rule 508 provides a safe harbor in private offering actions when there are

"insignificant deviations" from Rule 506(b).  This provision states that a deviation

from a "term, condition or requirement of § 230.504, § 230.505 or § 230.506 will

not result in the loss of the exemption from the requirements of section 5 of the Act

for any offer or sale to a particular individual or entity, if the person relying on the

exemption" satisfies three factors.  17 C.F.R. § 230.508(a).  The first two factors

tie the deviation to the purchasers: the failure to comply with a term, condition or

requirement of Rule 506 must not (1) "pertain to a term, condition or requirement

directly intended to protect that particular individual or entity"; and (2) must be

"insignificant with respect to the offering as a whole, provided that any failure to

comply with [certain specified terms] shall be deemed to be significant to the

offering as a whole."  *Id.*  The third factor requires a "good faith and reasonable

attempt" to comply with all Rule 504, 505, and 506 requirements.  *Id.*

Rule 508(b) states that "[a] transaction made in reliance on § 230.504, §

230.505, or § 230.506 shall comply with all applicable terms, conditions and

requirements of Regulation D."  *Id.* § 230.508(b).  Significantly, it provides that

"[w]here an exemption is established only through reliance upon paragraph (a) of

this section, the failure to comply shall nonetheless be actionable by the

Commission under section 20 of the Act." *Id.* This regulatory language is at issue

in the present case. There is no precedent explaining what the phrase "failure to

comply" modifies in this regulation, and whether this safe harbor is available in

SEC enforcement actions.

As we explain *infra*, our review of the regulatory construction and

regulatory history persuades us that the safe harbor provision is available to private

note offerings in SEC enforcement actions. Levin establishes a genuine dispute of

material fact whether the Banyon note offering, as a whole, falls under the safe

harbor provision in Rule 508. Thus, we reverse the district court's grant of

summary judgment on the registration claim and remand for further proceedings.

2. Rule 508 issue

Initially, the district court ruled that there was a genuine dispute of fact

regarding Banyon's compliance with Rule 508. Specifically, it found a genuine

dispute as to whether Banyon made a "good faith and reasonable" effort to comply

with Rule 506 as required under Rule 508(a)(3). 17 C.F.R. § 230.508(a)(3). The

record shows that Banyon attempted to comply with Rule 506(b)(2) by requiring

investors, before purchasing the Banyon promissory notes, to submit investor

certifications certifying that they were accredited investors under Rule 501, or, if

they were not, that they were either sophisticated investors or represented by a "purchaser representative" as required by Rule 506(b)(2)(ii).  The district court further found that there was a genuine issue of material fact regarding whether Banyon failed to comply with any provision of Regulation D that was "significant to the offering as a whole."  17 C.F.R. § 230.508(a)(2).

After this initial ruling by the district court, the SEC filed a motion for reconsideration, asserting that under Rule 508(b), Levin could not avail himself of the Rule 508(a) exemption because this exemption is applicable only in private actions, not SEC enforcement actions under the Securities Act.  Thus, the SEC argued that it was "the failure to comply" with Section 5 that was actionable.  Levin responded that "the failure to comply" referred to individual failures to comply with Rules 504-506, leaving the protection of the exemption in place for the Section 5 violation generally.  On reconsideration, the district court agreed with the SEC and entered judgment in its favor on the registration claim.  In our view, this was error.

In determining the meaning of a statute or regulation, "the first step is to determine whether the statutory language has a plain and unambiguous meaning by referring to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Bautista v. Star Cruises*, 396

F.3d 1289, 1295 (11th Cir. 2005) (quotation omitted).  "If the statute's meaning is

plain and unambiguous, there is no need for further inquiry."  *CBS Broad. Inc. v.*

*Echostar Commc'ns Corp.*, 532 F.3d 1294, 1300–1301 (11th Cir. 2008)

(quotations omitted).  To determine the plain meaning of a statute or regulation, we

do not look at one word or term in isolation, but rather look to the entire statutory

or regulatory context.  *Id.* at 1301.

Hence, we first look to the usage of the phrase "failure to comply" and note

that it appears numerous times in Rule 508.  It is used at the start of (a) in reference

to the terms of Rules 504-506 and to describe the basic premise of the exemption;

it appears in (a)(1) and (a)(2) referring back to its usage in (a); and it is used again

in (a)(2) to specifically reference the terms of Rules 504-506.  The word "comply"

is also used in (a)(3), separately from the phrase "failure to comply," again in

relation to Rules 504-506.  "A standard principle of statutory construction provides

that identical words and phrases within the same statute should normally be given

the same meaning."  *Powerex Corp. v. Reliant Energy Servs., Inc*., 551 U.S. 224,

232, 127 S. Ct. 2411, 2417 (2007); *see also Douglas v. Yates*, 535 F.3d 1316,

1320–21 (11th Cir. 2008) ("Similar language contained within the same section of

a statute must be accorded a consistent meaning.") (quotation omitted).  Given

Rule 508(a)'s repeated reference to "failure to comply" in the context of

compliance with the Rules of Regulation D for private offering exemptions, it follows that the phrase "failure to comply" in Rule 508(b) must be interpreted in the same manner: relating to compliance with Rules 504-506 of Regulation D and not to compliance with Section 5. *See Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013) (stating that "a term appearing in several places in a statutory text is generally read the same way each time it appears") (quotation omitted).

Second, if the SEC had intended for Rule 508(b) to address non-compliance with Section 5 of the Act, it would have expressly stated so. This is true especially because Rule 508(a), part of the same rule, explicitly references Section 5 of the Securities Act. *See* 17 C.F.R. § 230.508(a) (stating that a "failure to comply" with Rules 504-506 will not result "in the loss of the exemption from the requirements of section 5 of the Act" if certain conditions are satisfied). When a deliberative body "includes particular language in one section of a statute but omits it in another, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040 (1993) (quotation omitted).

Third, "statutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Aldrich*, 566 F.3d

976, 978 (11th Cir. 2009) (quotation omitted).  The district court's interpretation of

Rule 508 runs counter to this instruction.  The district court's interpretation renders

the entire first sentence of Rule 508(b)—providing that "[a] transaction made in

reliance on § 230.504, § 230.505, or § 230.506 shall comply with all applicable

terms, conditions and requirements of Regulation D"—superfluous.  The inclusion

of this first sentence adds meaning to Rule 508(b) only if it is interpreted as

allowing the SEC to bring Section 20 enforcement actions for specific violations of

the rules of Regulation D, not of Section 5 of the Securities Act, even where Rule

508(a) good faith compliance applies.  Otherwise, the sentence is not necessary.

In sum, the first part of the first sentence is necessary to qualify the second

part of the sentence.  The first sentence provides context, and the two sentences in

Rule 508(b) explain that a transaction made in reliance upon the Regulation D

private offering exemption generally must comply with all its terms, but if a

transaction violates those terms and is saved by Rule 508's safe harbor provision,

those specific violations are actionable even though the transaction is otherwise

exempt.

Additionally, the regulatory history lends support for this interpretation.

After requesting comment on whether a good faith compliance standard should be

instituted for Regulation D, the SEC proposed such a standard, explaining that

under the proposed rule, isolated and minor deviations from the requirements of

Regulation D might eliminate the exemption with respect to a particular sale, but

not with respect to the offering as a whole.  *See* Regulation D Revisions, 52 Fed.

Reg. 3015, 3020 (Jan. 30, 1987); 53 Fed. Reg. 7870, 7871 (Mar. 10, 1988).  At this

point in the regulatory history, however, no distinction had been made between

private and SEC actions.  After further comment, the SEC proposed a revised

version of Rule 508 that contains the language which currently appears in section

(b).  *See* Regulation D; Independent Exemptions from Registration Requirements,

54 Fed. Reg. 309, 310, 312, 314 (Jan. 5, 1989).  In reference to Rule 508(b), the

SEC explained that "[a] separate provision in reproposed Rule 508 provides that in

any case, failure to comply with any term, condition or requirement of Regulation

D would be actionable by the Commission regardless of the significance of the

deviation."  *Id.* at 312.  This final clause refers back to the "failure to comply,"

suggesting that it is the minor deviations from Regulation D that are actionable,

and not the offering as a whole under Section 5.

    We conclude that the district court erred in finding that the safe harbor

provision of Rule 508(a) was not available in this SEC enforcement action.  Based

on the plain language of the regulation and the regulatory history, we hold that

Rule 508(a) not only preserves the safe harbor for certain insignificant deviations

17

in private actions, but it also preserves the safe harbor in SEC enforcement actions. Because there are disputed facts about whether the Banyon notes comply with Rule 502(b)(2)(vii) in order to be eligible for a Rule 506 exemption, and, in turn, fall within the safe harbor provision of Rule 508, we hold that the district court erred in granting summary judgment to the SEC on Count I, the registration claim. Accordingly, we reverse the district court's judgment in favor of the SEC on the registration claim and remand for further proceedings.

B. *Motion for Continuance*

Levin argues that the district court abused its discretion when it denied his motion for a continuance. He posits that the denial prejudiced his case by preventing him from participating in jury selection, by tainting the jury against him, and by preventing him from assessing the testimony and assisting in his counsel's cross-examination of the SEC's first witness. Based on our review of the record, we hold that the district court did not abuse its discretion in denying the motion for continuance.

We have clearly stated that we will not reverse a district court's ruling on a motion for continuance unless the ruling is arbitrary, unreasonable, and severely prejudicial. *See Rink*, 400 F.3d at 1296. There are four factors we generally consider in determining whether a trial continuance is warranted. First, we

examine the diligence of the party requesting the continuance to ready the case

prior to the date set for trial.  *See Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th

Cir. 1987) (citation omitted).  Second, we consider the likelihood that the need for

a continuance could have been met if a continuance was granted.  *Id*.  Third, we

examine the extent to which granting the continuance would have been an

inconvenience to the court and the opposing party.  *Id.*  Fourth, we consider the

extent to which the requesting party might have suffered harm as a result of the

district court's denial of the continuance.  *Id; see also Fowler v. Jones*, 899 F.2d

1088, 1094 (11th Cir. 1990).  Another relevant factor we entertain is whether the

district court has granted a prior continuance in the case.  *See Quiet Tech. DC-8,

Inc. v. Hurel-Dubois UK Ltd*., 326 F.3d 1333, 1351 (11th Cir. 2003).

In considering these factors, we conclude that the district court properly

denied the motion for a continuance.  The first factor is irrelevant because the

parties do not dispute that in most respects Levin was diligent in readying his case

for trial.  As to the second factor, when Levin's counsel contacted the district court

the morning of the trial to inform the court of Levin's illness, counsel did not know

the specific extent of Levin's illness and asked for a week-long continuance.

Because the district court had no information regarding Levin's prognosis at the

time, we conclude that it did not abuse its discretion in reasoning that a week-long

19

continuance would not guarantee Levin's return.  *See Romero*, 552 F.3d at 1320–21 (noting that as to the second factor "[i]t is well-settled that a district court may deny a continuance when there is no guarantee that granting one will enable a party to [meet the need for the continuance]").

We conclude that the third factor weighs heavily against the continuance because the last-minute request, if granted, would have increased the inconvenience to the district court and the SEC.  The district court had secured the services of an extra court reporter for the trial and had summoned fifty potential jurors.  Moreover, one of the SEC's witnesses was available only for a few days, so a week-long continuance might have prevented his testimony.  Lastly and importantly, we conclude that Levin cannot demonstrate prejudice from the denial of the continuance.  We note that Levin voluntarily traveled to Panama several days before his trial was scheduled to commence.  Although Levin argues that his absence at the start of the trial tainted the jury's impression of him, the district court minimized any prejudice by informing the jurors that Levin was absent due to an illness.  The district court reiterated the reason for Levin's absence before jury selection and the presentation of the SEC's first witness.

Moreover, the district court weighed the fact that during the three years the case had been pending, the district court had granted three continuances.  This is a

permissible factor to consider in evaluating whether to grant a motion for continuance. *See Quiet Tech. DC-8, Inc*., 326 F.3d at 1351. Furthermore, Levin was present to testify on his own behalf. Thus, we conclude that Levin fails to show serious prejudice to his case from the district court's denial of the motion for continuance. Accordingly, we affirm the district court's order on this challenge.

## C. *Disgorgement Award*

Levin argues that the district court abused its discretion in entering a $40.1 million disgorgement award against him, and he proffers several reasons why we should reverse the disgorgement award. First, Levin claims that the district court should have reduced the disgorgement award by $30.4 million, the amount distributed by the Banyon bankruptcy trustee to Banyon's investors. Second, he argues that the award failed to provide for reductions based on any future distributions or other repayments by the Banyon trustee to Banyon's investors. Third, he claims that the district court erred by including in its calculation the gains obtained by his wife and his unaffiliated companies. None of these arguments merits relief.

"Disgorgement is an equitable remedy intended to prevent unjust enrichment." *SEC v. Monterosso*, 756 F.3d at 1337. The initial amount is established by the SEC who "needs to produce only a reasonable approximation of

the defendant's ill-gotten gains." *Id.* After the SEC has established the initial

amount, the burden shifts to the defendant "to demonstrate the SEC's estimate is

not reasonable." *Id.*

Initially, we note that for the first time on appeal, Levin challenges the

approximation of his gains based on the inclusion of gains obtained by his wife and

his companies. Because Levin failed to object to that inclusion in the district court,

we will not entertain this challenge on appeal. *See Access Now, Inc. v. Sw. Airlines

Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (stating that this court "has repeatedly

held that an issue not raised in the district court and raised for the first time in an

appeal will not be considered") (quotation omitted). If we did consider the issue,

however, Levin would not prevail because he has presented no evidence that the

gains obtained by his wife and his entities did not ultimately reach him.

We conclude that the district court properly based the disgorgement upon

Levin's gains and not the investors' losses. The $30.4 million returned by the

Banyon trustee did not come out of Levin's gains but instead came from a TD

Bank settlement for Banyon's investment in the fraud. Hence, this money was not

a return of investor proceeds raised during the Banyon offering, and the district

court properly did not consider these funds to offset the disgorgement. Moreover,

there is no evidence that the $1.75 million Levin contributed from his personal

bankruptcy estate has reached the hands of Banyon investors.  As the district court

noted, if any investor does ultimately recover from Levin, then Levin could

petition the court for a reduction in the disgorgement award because the recovery

would constitute a partial return of Levin's ill-gotten gains.  This indicates the

district court's clear understanding of its duty in ordering a disgorgement award.

Accordingly, we affirm the disgorgement award.

  D.  *Judge's questioning of witnesses*

  Levin contends that during the trial, the district court improperly intervened

during his testimony and Preve's testimony by asking them both "leading, one-

sided, and tendentious questions."  Levin claims that these questions constituted an

abuse of the district court's discretion to examine witnesses, as provided in Federal

Rule of Evidence 614.  Levin acknowledges that he did not object to the district

court's improper questioning at trial, but argues that he was not required to object

because such objection would place him in a disadvantageous position that might

create a conflict for him with the district court.  Regardless of the standard of

review employed by this court—abuse of discretion or plain error—Levin

maintains that reversal is appropriate because the district court's questioning

prejudiced his defense, affected the outcome of his trial, and seriously affected the

fairness, integrity, or public reputation of the proceeding.

A district court has discretion to question witnesses. *See Wright*, 392 F.3d at 1274. It is within that discretion that the district court can "make inquiries of a witness in order to clarify the evidence presented," act to prevent any misunderstanding of a witness's testimony, and "maintain the pace of trial by interrupting or limiting counsel's questions." *Id.* at 1275. A district court abuses that discretion when it abandons its proper role and assumes the role of an advocate. *Id.* at 1274. Under an abuse of discretion review, in order for Levin to be entitled to a reversal based on alleged improper comments by the district court, there must be a "clear effect on the jury." *United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011).

However, our review is for plain error. Regardless of the provision in Rule 614(c) that allows for parties to refrain from objecting to a judge's questioning of a witness in front of the jury so as to avoid prejudicing themselves, the rule "does not entirely relieve the litigant of his duty to object in order to preserve the exception on appeal." *Hanson v. Waller*, 888 F.2d 806, 813 (11th Cir. 1989). In order to preserve an objection, a party should lodge the objection at the next available opportunity when the jury is not present. *Id.* Otherwise, the alleged error is deemed waived unless it constitutes plain error. *Id.*

Levin cannot prevail under a plain error review because he cannot show that the district court's alleged improper questioning seriously affected the fairness, integrity, or public reputation of his trial. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). Levin's testimony lasted for all of one day and the start of the next day. During his testimony, the district court had to instruct Levin at least one dozen times to answer questions directly and to give clear answers. At one time, the district court sent the jury out of the room to admonish Levin to cease arguing with the SEC's counsel. Upon review, it is clear that the district court's questions were meant to provide clarification in Levin's testimony and to maintain the pace of the trial.

The district court interrupted when Levin was unresponsive to the SEC's counsel's questions, when the SEC's questions confused Levin, and when the SEC's counsel's questioning became repetitive. This is all within the district court's discretion. *See Wright*, 392 F.3d at 1274–75. Moreover, the district court instructed the jury to disregard any of its questions and to arrive at its own decision about the facts. Considering the record as a whole, we conclude that there is no reversible error. *See, e.g., United States v. Bertram*, 805 F.2d 1524, 1529 (11th Cir. 1986) (holding that, given the vigor of counsel and the cautionary instructions to the jury, thirty-five "egregious" interruptions from the trial judge "did not

25

intrude [] to such an extent that he showed bias in favor of the prosecution or prejudice against the defendants or their attorneys"). Accordingly, we conclude that Levin is not entitled to relief on this claim.

## V.  CONCLUSION

We hold that the district court did not abuse its discretion in denying Levin's motion for continuance or in questioning Levin and Preve during the trial. We affirm the district court's disgorgement award because the district court properly based the award on Levin's ill-gotten gains and not the investors' losses. However, we reverse the district court's judgment on the registration count with regard to its determination that Rule 508(a) does not apply to SEC enforcement actions. There are disputed issues of fact whether the Banyon note offerings failed to comply with any provision of Regulation D that was significant to the offering as a whole. Thus, we are compelled to remand that issue to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.